UNITED STATES of America,
Plaintiff-Appellee,

v.

James David TUTT,
Defendant-Appellant.

No. 82–8530
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1983.

David Cohen, Federal Public Defender, Martin C. Puetz, Asst. Federal Public Defender, Savannah, Ga., for defendant-appellant.

W. Leon Barfield, Savannah, Ga., James G. Lindsay, Washington, D.C., for plaintiff-appellee.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

Convicted of putting a person's life in jeopardy by using a dangerous weapon while committing a bank robbery, 18 U.S.C.A. § 2113(d), James David Tutt argues three issues on appeal: (1) he did not place a teller's life in danger; (2) the trial court erred in refusing to replace a juror with an alternate because of the juror's failure to disclose his prior employment as a police officer during *voir dire,* and the juror's contact with a government witness during the trial; and (3) the prosecutor made improper prejudicial remarks during his opening statement. We affirm.

■ Tutt first argues that the bank employee's life was not placed in jeopardy during the robbery because bulletproof glass completely shielded her from defendant. A brief review of the evidence is necessary to understand this argument.

Shortly before 1:00 p.m. on the day of the bank robbery, a male identified as Tutt entered a branch of the Great Southern Federal Savings and Loan in Savannah. Gayle Oglesby, the bank manager, testified that after she heard someone say, "Give me all your money," she turned and saw a man holding a gun. Oglesby stepped into a teller's cage and set off an alarm which activated the bank's cameras and alerted the police. She put all the loose money from the drawer as well as a package of bait money, which contained a red dye pack and tear gas, into a brown bag the robber gave her. The man took the bag and left the building. Oglesby testified that $1,660 was taken and that she gave the robber the money because she feared for her life. Oglesby described, and the jury saw photographs of, the bulletproof glass which separated the teller cages from the main area of the bank. There was testimony that one section of this "Lexguard" was missing from a teller's window three feet away from the one at which the robber stood. When Tutt was later apprehended, he had a .38 caliber handgun concealed in his pants.

The issue is whether the bulletproof glass which may have made it impossible to shoot Oglesby negated a finding that defendant put her life in jeopardy. The rule in this Circuit is that "a gun used in connection with and at the scene of a bank robbery is as a matter of law a dangerous weapon and that those on the immediate scene of the robbery are placed in an objective state of danger...." *United States v. Parker,* 542 F.2d 932, 934 (5th Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977) (quoting *Baker v. United States,* 412 F.2d 1069, 1072 (5th Cir.1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970)). The relevant inquiry is not whether the teller was frightened, but whether, objectively speaking, the accused's use of a dangerous weapon or device actually placed her life in danger. 18 U.S.C.A. § 2113(d); *see United States v. Parker,* 542 F.2d at 934.

Because Oglesby was completely shielded throughout the course of the robbery by a plastic barrier capable of stopping a bullet from a gun even more powerful than Tutt's, defendant argues she was completely protected from being shot either by Tutt or an intervening third party so that her life was not objectively placed in danger. The argument is factually incorrect. First, according to Oglesby's testimony, she was not standing behind the barrier when she first encountered Tutt holding a drawn gun. She was unprotected by the Lexguard barrier from that point until she stepped into the teller's cage. Second, the photographs in evidence show an opening between the bottom of the barrier and the counter, allowing the jury to infer that she was not "completely" protected from a bullet. Finally, there was evidence that just three feet away from where Oglesby stood, a section of the barrier was missing. The facts, therefore, do not support the argument that the employee was completely protected throughout the course of the robbery.

■ Tutt's argument also fails as a matter of law. In *United States v. Johnson,* 401 F.2d 746 (2d Cir.1968), the Second Circuit rejected the argument that the teller's life was never really in danger because the bullet fired by the defendant failed to pene-

trate bulletproof glass. As that court noted, the purpose of § 2113(d) is "to allow higher sentences to be imposed on those who use dangerous weapons in a way reasonably calculated to put life in danger." 401 F.2d at 747. This Court stated in *Parker,* "[t]he use of a gun is *per se* sufficient cause to impose the enhanced sentence." 542 F.2d at 934. We accept *Johnson* as a proper analysis of the law. Tutt's actions warranted a conviction under § 2113(d).

■ Tutt next argues that the trial court should have replaced a juror, Bennett, for two reasons: first, during *voir dire,* he failed to disclose either his prior affiliation with a law enforcement agency or his acquaintance with a key government witness; and second, he had contact with that government witness during the trial.

As to the first contention, the court asked whether any jurors were current or past employees of the United States. A juror asked, "City employment?" The court answered, "No, I was talking about the Federal Government." Later in the trial, after defendant had raised doubts about Bennett's qualifications, the court questioned Bennett. He disclosed that he had worked for the Savannah Police Department in 1969.

The court also asked the jurors whether they knew any of the witnesses who would testify during the trial. Bennett did not respond when Detective Brinson's name was mentioned, nor did he give a positive response when the court asked the jurors if they had any relatives or friends in law enforcement work. Detective Brinson worked for the Savannah Police department, and told the court that he and Bennett graduated from high school together in 1966, but that he never worked with Bennett or socialized with him. Bennett later insisted that he did not remember Detective Brinson and that the name was not familiar to him.

As to the second claim, defense counsel reported to the court Bennett had spoken to Detective Brinson in the elevator. Bennett told the court that he simply said "hello". Brinson told the court he did not notice Bennett in the elevator.

■ A party who seeks a new trial because of nondisclosure by a juror during *voir dire* must show actual bias. *United States v. Vargas,* 606 F.2d 341, 344 (1st Cir.1979). *Cf. United States v. Crockett,* 514 F.2d 64, 69 (5th Cir.1975) (defendant must show actual bias to gain new trial based on statutory disqualification of juror). Tutt argues that standard should not apply because he brought Bennett's alleged nondisclosure to the court's attention before the jury retired. Tutt has not shown, however, that Bennett deliberately failed to disclose relevant information to the court. Brinson's failure to remember Bennett confirmed Bennett's insistence that he did not remember Brinson. At no time during the initial *voir dire* did the court specifically ask any question relating to present or past law enforcement employment. There is no merit to the argument that the juror's prior employment by a law enforcement agency was raised implicitly by the question regarding friends in law enforcement. When allowed to question the jurors under Fed.R. Crim.P. 24(a), defense counsel did not ask the jurors any further questions addressing either their previous employment or acquaintances in law enforcement.

The determination regarding a juror's bias will be reversed only for a manifest abuse of discretion. *United States v. Muller,* 698 F.2d 442, 444 (11th Cir.1983). The defendant is required to demonstrate an actual, identifiable prejudice on the part of the juror. *United States v. Costner,* 646 F.2d 234, 236 (5th Cir.1981). Tutt has failed to show actual prejudice on the part of Bennett. Therefore, he has not demonstrated an abuse of discretion.

■ In his opening statement, the prosecutor stated that one witness would testify that the robber wore "what appeared to be a white bag over his head—I think she'll probably describe it to you as something resembling what we expect a KKK member to wear over his head. . . ." Defense counsel immediately objected to the reference, and the court cautioned the jury to disre-

gard any remarks about the type of bag the alleged robber wore and its similarity to anything worn by other groups.

In view of the immediate curative instruction given by the court, the identification of defendant by several witnesses, and the overwhelming evidence of Tutt's guilt, any prosecutorial misconduct would be harmless error. Fed.R.Crim.P. 52(a). *United States v. Butera,* 677 F.2d 1376, 1383 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

AFFIRMED.