**Thaddeus Michael LOCKHART,
Petitioner-Appellant,**

v.

**O.L. McCOTTER, Director, Texas
Department of Corrections, et
al., Respondent-Appellee.**

No. 84–1901.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1986.

Jackson, Walker, Winstead, Cantwell & Miller, Jeffrey E. Oleynik, (Court-appointed —Not Under Act), Dallas, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Thaddeus Michael Lockhart appeals the federal district court's denial of Lockhart's petition for habeas corpus relief. 28 U.S.C. § 2254. Lockhart contends that he is entitled to habeas corpus relief on the grounds that he was deprived of effective assistance of counsel both at trial and on appeal. Perceiving no reversible error in the federal magistrate's findings and recommendations, which were adopted by the district court, we affirm.

## I. BACKGROUND

Lockhart was arrested and ultimately convicted of aggravated robbery in Dallas, Texas. On the day of his arrest, April 2, 1976, Lockhart had worked distributing hand circulars and been paid $18.00. After work, Lockhart spent several hours at the Stop-In Cafe in North Dallas. Lockhart testified at trial that he left the cafe at

approximately 11:00 p.m. following an argument with a prostitute.

At approximately the same time that Lockhart left the Stop-In Cafe and in that same neighborhood, James Hall, who had also just left the Stop-In Cafe, was robbed. According to Hall, a man put a knife to Hall's throat and demanded Hall's money. After giving the man his wallet, which contained $30.00, Hall was released. Hall immediately ran to a pay phone and called the police.

When police officers arrived, Hall told the officers that his assailant was about 5 feet, 11 inches tall, weighed 170 pounds, and was wearing a red windbreaker and blue pants. Hall then accompanied the officers to search for the robber. Approximately one block from the Stop-In Cafe, the police encountered Lockhart, who was wearing a red windbreaker and blue trousers, walking along the street. The police officer who spotted Lockhart asked Hall, "Is that him?" In response, Hall identified Lockhart as the robber and, after Lockhart had been stopped and searched, identified a knife taken from Lockhart as the one used in the robbery. Although the police found $12.00 in Lockhart's pants, they could not recall whether they had also discovered Hall's stolen wallet at the time of Lockhart's arrest.[1]

The police took Lockhart to the Dallas City Jail where he was strip searched and booked. After Lockhart was searched, a "purse", keys, two necklaces and $1.06 were inventoried and placed in a personal property envelope to be held for Lockhart. Two knives along with $12.00 in cash which had also been found on Lockhart when he was searched were held by the police as evidence.

Several months after Lockhart's arrest and subsequent transfer to the Dallas County Jail, Dallas County prosecutor Rider Scott asked police investigator William C. Kelley to search Lockhart's personal property envelope. Scott had noticed that a "purse" had been taken from Lockhart

---

1. At the time of his arrest, Lockhart was bleeding from a cut in his hand. Lockhart later testified that he had cut his hand during his earlier argument with the prostitute.

and speculated that the inventoried "purse" could be the wallet taken in the robbery. Officer Kelley searched Lockhart's personal property envelope and located a wallet which was in fact later identified at trial as belonging to the robbery victim James Hall.

On May 10, 1976, Lockhart was indicted by a Dallas County Grand Jury for aggravated robbery.[2] Three days later, Dallas attorney Don G. Smith was appointed to represent Lockhart. Smith was unsuccessful in persuading Lockhart to accept a plea bargain and on January 5, 1977, Lockhart's trial was held.

At trial, the State produced three witnesses. First, the robbery victim James Hall testified identifying Lockhart as the man who had robbed Hall on April 2, 1976. The arresting officer, Larry Davis, also testified giving a detailed account of the events which had occurred after he was called to investigate Hall's robbery. Davis also identified the two knives taken from Lockhart at the time of the arrest. The final prosecution witness, Officer Kelley, produced the wallet recovered from Lockhart's personal property envelope. The State recalled James Hall who identified the wallet and two pictures, one of Hall's girlfriend[3] and the other of her children, which were contained in the wallet.

Lockhart's attorney, Don Smith, both cross-examined and recalled each of the State's witnesses attempting to exploit whatever gaps existed in their testimony. In particular, Smith attempted to undermine Hall's identification of Lockhart as the robber. Smith also pointed out to the jury that no State witness had testified that Hall's wallet had actually been recovered from Lockhart at the time of Lockhart's arrest. Smith did not call any additional witnesses. However, contrary to Smith's advice, Lockhart testified on his own behalf. Lockhart denied having committed the robbery and asserted that the wallet had been planted in his personal property envelope. The State impeached Lockhart's testimony with evidence of two prior felony convictions, one in South Carolina and the other in New York.

After hearing closing arguments, the jury returned a guilty verdict. Lockhart had earlier elected to have the trial court judge assess punishment. After conducting a sentencing hearing, the court sentenced Lockhart to confinement for forty-five years in the Texas Department of Corrections.

Attorney Steven G. Condos was appointed to represent Lockhart on appeal. Based on his conclusion that there were no non-frivolous grounds upon which to base an appeal, Condos filed an "affidavit of counsel" stating that Lockhart's appeal had no merit. Condos then sent Lockhart a letter, dated August 25, 1977, explaining what he had done and informing Lockhart that Lockhart could obtain the trial transcript and file a pro se appellate brief. On October 5, 1977, the Texas Court of Criminal Appeals affirmed Lockhart's conviction.

Lockhart filed the instant case asserting, in part, ineffective assistance of counsel both at trial and on appeal on February 1, 1979, in federal district court. An amended complaint and petition for habeas corpus relief were filed in federal district court on March 21, 1980. On January 28, 1981, the district court held an evidentiary hearing concerning Lockhart's request for habeas corpus relief. Following that hearing, the federal district court dismissed without prejudice Lockhart's habeas corpus application on the ground that Lockhart had not exhausted state remedies.[4]

2. Lockhart has been in custody since the date of his arrest having failed to post bond.

3. Hall testified that the picture was of his wife rather than his girlfriend based on his mistaken belief that his girlfriend was his common law wife.

4. The federal district court stayed Lockhart's additional claims, unrelated to both the habeas corpus action and the instant appeal, pending resolution of the habeas corpus issues.

Lockhart then filed an application for a writ of habeas corpus [5] in the 194th Judicial District Court in and for Dallas County. An evidentiary hearing was conducted before a state magistrate who made findings of fact and conclusions of law recommending that the writ be denied. In particular, the state magistrate concluded that Lockhart had not been denied effective assistance of counsel either at trial or on appeal. The state district judge adopted the magistrate's recommendation and the denial of Lockhart's writ was affirmed by the Texas Court of Criminal Appeals without written opinion.

Lockhart again petitioned the federal district court for habeas corpus relief repeating his earlier ineffective assistance of counsel claims.[6] An evidentiary hearing was conducted regarding those claims before a federal magistrate on April 18, 1984. The parties stipulated that the magistrate could consider: (1) depositions taken in the case; (2) testimony taken in the earlier evidentiary hearing conducted in 1981 before the federal district court; and (3) testimony presented in an evidentiary hearing conducted before the state magistrate. Neither party offered additional testimony before the federal magistrate.

On January 11, 1984, the federal magistrate entered findings of fact and conclusions of law and recommended that Lockhart's application for a writ of habeas corpus be denied. The federal district court adopted the magistrate's findings and conclusions and entered judgment on September 17, 1984, denying Lockhart's habeas corpus petition.

Lockhart filed a timely notice of appeal and this Court granted Lockhart's application for leave to proceed in forma pauperis and for a certificate of probable cause.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

Lockhart first contends that he was deprived of effective assistance of counsel at trial. Lockhart contends that his trial counsel was ineffective because he (1) failed to object to introduction of Hall's wallet into evidence; (2) failed to file necessary pretrial motions; and (3) failed to adequately investigate the case. Although the issue is close, we agree with the federal district court that Lockhart was not deprived of effective assistance of counsel at trial.

### A. *The Applicable Standards*

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court held that "[t]he bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The Supreme Court established a two-pronged test for determining the effectiveness of counsel's performance:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a

---

5. Lockhart had filed two prior applications for habeas corpus relief in state court. Lockhart originally filed a petition for habeas corpus relief in state court in April of 1978. That petition, which was submitted pro se and without the benefit of a trial transcript or statement of facts, was denied by the trial court and the denial was affirmed by the Texas Court of Criminal Appeals.

On July 15, 1978, Lockhart attempted to file a second application for a writ of habeas corpus. The state court clerk refused to file the application, instead construing it as an application for trial records which the court granted.

6. Lockhart also asserted that the wallet introduced into evidence at trial was obtained by an illegal search and seizure in violation of the Fourth Amendment.

trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Id.*

In determining whether counsel's performance was deficient, the relevant inquiry is whether counsel's representation fell below an objective standard of reasonableness as informed by prevailing professional standards. *Id.* at 2065. The reviewing court must give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment. *Ricalday v. Procunier,* 736 F.2d 203, 206 (5th Cir.1984).

Moreover, mere error by counsel, even if professionally unreasonable, does not justify setting aside a criminal conviction if the error had no adverse impact on the defense. Rather, to successfully assert a claim of ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland,* 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* A defendant need not, however, show that "counsel's deficient conduct more likely than not altered the outcome of the case." *Id.*

In the instant case, evidentiary hearings have been held on Lockhart's ineffective assistance of counsel claims at both federal and state district court levels. Because both the deficiency and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact, this Court must make an independent determination of whether counsel's representation passes constitutional muster. *Mattheson v. King,* 751 F.2d 1432, 1438 (5th Cir.1985). However, to the extent that the state and federal courts made specific predicate factual findings, this Court must apply the section 2254(d) presumption of correctness and the clearly erroneous standard of Federal Rule of Civil Procedure 52(a) respectively. *Strickland,* 104 S.Ct. at 2070.

B. *Failure to Object to Introduction of Hall's Wallet Into Evidence*

The most serious of Lockhart's claims is that his trial counsel rendered ineffective assistance by failing to object when the State moved to introduce Hall's wallet into evidence at trial. Officer William C. Kelley of the Dallas Police Department testified that he seized the wallet from Lockhart's personal property envelope at the county jail. Kelley obtained the wallet several months after Lockhart's arrest at the request of the prosecutor and without Lockhart's consent or a search warrant. Lockhart contends that either of two available objections would have required the trial court to exclude the wallet from evidence.

Lockhart first contends that a Fourth Amendment objection would have required the trial court to exclude the wallet from evidence.[7] According to Lockhart, a warrant was required before Kelley could search Lockhart's property envelope. Lockhart concludes that his trial counsel rendered ineffective assistance by failing to raise such a Fourth Amendment objection.

Contrary to Lockhart's assertion, however, no warrant was required prior to Kelley's search of Lockhart's property envelope. In *United States v. Edwards,* 415 U.S. 800, 808, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974), the Supreme Court stated:

once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were

7. Given this Court's conclusion that the warrantless search of Lockhart's property envelope did not violate the Fourth Amendment, we are not required to determine whether *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes an ineffective assistance claim based on counsel's failure to assert an available Fourth Amendment objection. *See Christian v. McKaskle,* 731 F.2d 1196, 1199 (5th Cir.1984) (recognizing that the issue remains unresolved in this Circuit).

subject to search at the time and place of his arrest *may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed* between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. *This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.* (emphasis added).

Under *Edwards*, no warrant was required when the police searched Lockhart's property envelope. The police had earlier, at the time of inventory, lawfully viewed the wallet contained in Lockhart's envelope. Because of this earlier police inspection of his personal property, Lockhart had only a diminished expectation of privacy with respect to the items contained in the envelope. *See United States v. Grill*, 484 F.2d 990, 991 (5th Cir.), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1973) (no reasonable expectation of privacy is breached by an officer's taking a second look at the matter with respect to which the expectation of privacy has been at least partially dissipated). By taking a "second look" at the wallet without first obtaining a search warrant, the police did not unduly intrude upon whatever remaining expectation of privacy Lockhart had.[8] *See* 2 W. Lafave, *Search and Seizure*, § 5.3 (1978). Because the warrantless search did not violate the Fourth Amendment, Lockhart's counsel did not render deficient performance by failing to raise a Fourth Amendment objection to the wallet's introduction.

In the alternative, Lockhart contends that had his trial counsel raised a chain of

custody objection to the State's introduction of the wallet, the wallet would have been excluded from evidence. To establish a proper chain of custody as a predicate to introducing the wallet, the State should have introduced testimony (1) tracing the wallet from the arrest to Lockhart's property envelope; (2) establishing the security of and limited access to the envelope; and (3) tracing the wallet from the property envelope to the court. *See Sifford v. State*, 511 S.W.2d 526, 527 (Tex.Crim.App. 1974). However, the State only introduced testimony tracing the wallet from Lockhart's property envelope to the court. Moreover, the State failed to establish the security of the wallet once it had been removed from Lockhart's personal property envelope.

Recognizing that the State had not established a proper chain of custody, the federal magistrate nevertheless concluded that the failure of Lockhart's attorney to object was not ineffective assistance. The magistrate found that Lockhart's attorney was justifiably surprised at the wallet's appearance given Lockhart's representations that he had disposed of the wallet prior to being arrested. The magistrate also found that because the wallet was "specifically unique and identifiable evidence," under Texas law a chain of custody objection would not have barred admission of the wallet. The magistrate concluded that counsel's failure to assert such an objection had not prejudiced Lockhart.

Without deciding whether Lockhart's attorney rendered deficient representation, this Court agrees with the federal magistrate that Lockhart was not prejudiced by his counsel's failure to assert a chain of custody objection. Tangible objects involved in a crime, such as the wallet in the instant case, are admissible in evi-

---

8. A different question might be presented if the instant case involved a search based upon a mere hunch that something of evidentiary value with respect to the charged offense, indeed, any other offense might be found. In this case, the police had probable cause to believe that a wallet, which they knew was located in Lockhart's

property envelope, was highly relevant evidence in Lockhart's robbery prosecution.

No evidence supports Lockhart's contention that the reasoning of *Edwards* does not apply since the wallet found in his personal property envelope was deposited (or planted) in that envelope after the initial property inventory.

dence only when identified and shown to be in materially the same condition as at the time of the crime. *McCormick's Handbook of the Law of Evidence*, 527 (E. Cleary 2d ed. 1972). When the object has passed through several hands before being produced in court, it often is necessary to establish a chain of custody in order to prove either identity or lack of alteration. *See Easley v. State*, 472 S.W.2d 128 (Tex. Crim.App.1971).

However, when an object cannot be easily altered or substituted, establishing a continuous chain of custody is not as important.[9] *See McCormick's Handbook of the Law of Evidence*, 527 (E. Cleary 2d ed. 1972) ("If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition."). Absent evidence of substitution or alteration, the failure to establish a chain of custody will generally go only to the weight of the evidence rather than its admissibility. *See Greer v. State*, 523 S.W.2d 687, 691 (Tex. Crim.App.1975). Moreover, when the object is expressly identified at trial as the object involved in the crime, establishing a chain of custody is not necessary for the object to be admissible. *See Houston v. State*, 503 S.W.2d 540, 541 (Tex.Crim.App. 1974); *see also McCormick's Handbook of the Law of Evidence*, 527 (E. Cleary 2d ed. 1972); *United States v. Mahone*, 537 F.2d 922, 930 (7th Cir.), *cert. denied*, 429 U.S.

1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976) ("The chain of custody is not relevant when a witness identifies the object as the actual object about which he has testified.").

In the instant case, the wallet, containing pictures of the robbery victim's girlfriend and her children, was readily identifiable and not subject to undetectable alteration. At trial, the robbery victim specifically identified the wallet as the wallet which had been taken during the robbery. Moreover, Officer Kelley identified the wallet as the same wallet Kelley had removed from Lockhart's personal property envelope. In these circumstances, a chain of custody objection by Lockhart's attorney would not have resulted in exclusion of the wallet.

Based on testimony at trial identifying the wallet as that taken from Hall and found in Lockhart's property envelope, it appears that under Texas law the State was not required to establish a chain of custody. However, even if a chain of custody was required, a failure to establish such custody would only go to the weight rather than the admissibility of the evidence. During cross examination of the State's witnesses, Lockhart's attorney pointed out that no one could testify that the wallet was found on Lockhart at the time of his arrest. Whether Lockhart actually had the wallet at the time of his arrest presented a fact issue for the jury.[10] In these circumstances, the attorney's failure to assert a chain of custody objection, which at best only went to the weight of the evidence, cannot be said to have prejudiced Lockhart.

---

9. Chain of custody cases usually involve evidence that cannot be readily and precisely identified at trial. *See e.g., Sifford v. State* 511 S.W.2d 526 (Tex.Crim.App.1974) (partially filled vodka bottle); *Boss v. State*, 489 S.W.2d 582 (Tex.Crim.App.1973) (package containing heroin); *Mitchell v. State*, 488 S.W.2d 786 (Tex. Crim.App.1973) (bag containing marijuana; *Wright v. State*, 420 S.W.2d 411 (Tex.Crim.App. 1967) (package of cigarettes).

10. During evidentiary hearings in both state and federal court, Lockhart has failed to produce any evidence of tampering with the wallet.

Contrary to Lockhart's assertions, copies of Lockhart's property inventory sheets completed at the time of Lockhart's arrest do not show that the black wallet produced at trial was not inventoried at the time of Lockhart's arrest. Rather, the property inventory sheets reflect that a "purse" was inventoried at the time of Lockhart's arrest.

Furthermore, the inventory sheets were not introduced into evidence at either the state or federal evidentiary hearings. While the sheets were referred to, they were never actually produced.

## C. *Failure to File Pretrial Motions*

Lockhart also contends that his trial counsel rendered ineffective assistance by failing to file necessary pretrial motions. In particular, Lockhart contends that his trial counsel should have filed a *Brady* motion pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

However, Lockhart has failed to indicate any exculpatory evidence such a motion would have produced. The prosecutor had an independent duty to identify and disclose *Brady* material. No basis exists for inferring that, had a general *Brady* request been made, any exculpatory evidence would have been disclosed since the identification of *Brady* material is preliminarily a matter for the prosecutor's judgment.[11] *See United States v. Sangemino*, 401 F.Supp. 903, 909 (S.D.N.Y.1975) *aff'd*, 538 F.2d 316 (2d Cir.1976). Thus, Lockhart's *Brady* claim fails to satisfy the prejudice prong of *Strickland*.

## D. *Failure to Adequately Investigate*

Lockhart's final ineffective assistance of trial counsel claim is that Smith failed to adequately investigate the case prior to trial. This Court has observed that because an accused's trial can be seriously affected by the action of his attorney in preparing a case, effective counsel must conduct a reasonable amount of pretrial investigation. *See Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir.1985). However, under *Strickland*, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. *See id.* at 1178–80.

Lockhart first contends that Smith rendered ineffective assistance by failing to locate and produce witnesses to support Lockhart's story that at the time Hall was robbed, Lockhart was involved elsewhere in an argument with a prostitute. However, the federal magistrate found that Lockhart was unable to provide Smith with the names of any persons to support Lockhart's claim that he did not perpetrate the robbery. The magistrate also found that Lockhart had failed to produce any evidence indicating that uncalled witnesses could have provided testimony favorable to Lockhart. These factual findings are not clearly erroneous. Fed.R.Civ.P. 52(a).

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984). Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution. *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir.1985). In the instant case, even if Smith's failure to investigate Lockhart's potential alibi constituted deficient performance, Lockhart has not shown that he was prejudiced by Smith's failure.[12]

Lockhart also contends that he was deprived of effective assistance by Smith's failure to depose the State's principal witness James Hall. However, again, Lockhart has not shown that he was prejudiced by Smith's failure. Deposing Hall might have revealed that Hall was confused regarding the common law wife status of his girlfriend and that Hall's recollection of the name of a prior employer was faulty. Given the strength of the evidence corroborating Hall's identification of Lockhart as the robber, counsel's failure to point out such

---

**11.** The prosecutor's failure to produce the inventory sheets as *Brady* material is not an issue before this Court. Rather, we merely hold that Lockhart has failed to show prejudice from his trial counsel's failure to file a *Brady* motion.

**12.** We note that Lockhart's trial counsel made a tactical decision not to pursue Lockhart's poten-

tial alibi. Counsel concluded that even if Lockhart had been involved in a dispute with a prostitute on the evening of the robbery, Lockhart could have also robbed Hall either a few minutes before or after his dispute with the prostitute.

flaws in Hall's testimony at trial did not prejudice Lockhart.[13]

### III. INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

■ Lockhart next contends that he was deprived of effective assistance of counsel on appeal. According to Lockhart, his appellate counsel rendered ineffective assistance by failing to raise two nonfrivolous issues on appeal: (1) ineffective assistance of counsel at trial; and (2) that the wallet taken from Lockhart's personal property envelope and introduced into evidence was obtained in an unlawful search in violation of the Fourth Amendment. Lockhart concludes that filing an "affidavit of counsel" stating that Lockhart's appeal was without merit constituted ineffective assistance given the existence of two nonfrivolous grounds for appeal.

We agree that Lockhart's appellate counsel rendered deficient performance. Both Lockhart's Fourth Amendment claim and his ineffective assistance of trial counsel claims presented nonfrivolous grounds for appeal.[14] Filing an "affidavit of counsel" stating that an appeal is without merit when nonfrivolous grounds exist for appeal falls well below the minimum standard of competency required of counsel in criminal cases.[15] *See generally Passmore v. Estelle,* 607 F.2d 662 (5th Cir.), *cert. denied,* 446 U.S. 973, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1979) (submission of a one sentence appellate brief constituted ineffective assistance

of counsel); *Cannon v. Berry,* 727 F.2d 1020, 1022 (11th Cir.1984) (failure to file a brief in a nonfrivolous appeal falls below the standard of competency expected and required of counsel in criminal cases); *Laffosse v. Walters,* 585 F.Supp. 1209, 1212–13 (S.D.N.Y.1984) (where several nonfrivolous issues could have been raised on appeal, it was inappropriate for counsel to file an *Ander's* brief).

Nevertheless, Lockhart has failed to demonstrate that he was prejudiced by his appellate's counsel's deficient performance. Only two potentially reversible grounds for appeal existed in the instant case. While both issues presented nonfrivolous questions, we have already rejected both Lockhart's Fourth Amendment claim and his ineffective assistance of trial counsel claim. Thus, Lockhart has failed to demonstrate a reasonable probability that but for appellate counsel's unprofessional errors, the result of Lockhart's appeal would have been different.[16]

### IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

**13.** Lockhart's additional effective assistance of trial counsel claims are similarly without merit. The federal magistrate's finding that no credible evidence indicated that Lockhart's prior conviction in South Carolina was partially uncounselled was not clearly erroneous. Moreover, Lockhart's attorney admitted during oral argument that he could not seriously contend that Lockhart was rendered ineffective assistance due to counsel's failure to request that voir dire and closing arguments be recorded.

**14.** Moreover, Lockhart's appellate counsel misrepresented the record to the detriment of his client in the "affidavit of counsel." In the affidavit, Lockhart's attorney stated that Lockhart admitted that the police had found a black billfold at the time of his arrest. To the contrary, the record does not reflect that Lockhart has ever made such an admission.

In Texas, an ineffective assistance of trial counsel argument can be made on direct appeal. *See, e.g., Johnson v. State,* 629 S.W.2d 731 (Tex. Crim.App.1982) (en banc); *Weathersby v. State,* 627 S.W.2d 729 (Tex.Crim.App.1982).

**15.** This is not a case where appellate counsel argued several nonfrivolous claims on appeal but declined to present additional nonfrivolous claims. In the instant case, appellate counsel failed to present *any* issues. No tactical decision could possibly justify the actions of Lockhart's appellate counsel.

**16.** Similarly, Lockhart's other contentions do not require this Court to grant his application for a writ of habeas corpus.