Anthony **RIGGINS**

v.

Hilton **BUTLER.**

Civ. A. No. 88–1688.

United States District Court,
E.D. Louisiana.

Feb. 9, 1989.

Anthony Riggins, pro se.

Virginia Schleuter, Deputy Federal Public Defender, New Orleans, La., for petitioner.

Terry M. Boudreaux, Asst. Dist. Atty., Gretna, La., for respondent.

## ORDER AND REASONS

DUPLANTIER, District Judge.

Petitioner, Anthony Riggins, is in custody at the Louisiana State Penitentiary after conviction of first degree murder. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent concedes that petitioner has exhausted the available state remedies.[1] Upon review of the entire

---

1. The record discloses that, contrary to the state's concession, a number of petitioner's

record, the court has determined that a federal evidentiary hearing is not necessary and that the petition should be dismissed for the following reasons.

Petitioner, a black man, was convicted by a jury of the first degree murder of Peter Dauenhauer, a white man. It was undisputed at trial that petitioner shot and killed Dauenhauer. In his defense, petitioner testified that he shot Dauenhauer in self-defense after Dauenhauer threatened him verbally and appeared to draw a gun.

Petitioner now asserts five grounds for habeas corpus relief: (1) he was deprived of his right to equal protection of the law because the prosecution used its peremptory challenges to exclude blacks from the jury; (2) the charge to the jury unconstitutionally shifted the burden of proof to the defendant on the issue of intent; (3) the conviction was based on insufficient evidence; (4) he was denied the right to a fair and impartial jury because it was undisclosed on *voir dire* that the foreman of the jury was a former police officer; and (5) he was denied his Sixth Amendment right to effective assistance of counsel at both the trial and appellate stages of the proceedings.

*1. Exclusion of Blacks from the Jury*

■ Relying on the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), petitioner contends that the state purposely used its peremptory challenges to exclude blacks from the jury in violation of the Equal Protection Clause of the Fourteenth Amendment. Assuming *arguendo* that the

prosecutor peremptorily excused prospective jurors on the basis of race, we nevertheless reject petitioner's equal protection claim.

Petitioner's conviction was affirmed by the Louisiana Supreme Court in 1980, almost six years before the *Batson* decision was announced. Thus, petitioner is urging retroactive application of the *Batson* doctrine. Because the Supreme Court has specifically held that *Batson* is not to be applied retroactively on collateral review, *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), we look to pre-*Batson* law in analyzing petitioner's equal protection claim.[2]

Before *Batson*, claims of racial discrimination in jury selection were governed by the principles adopted by the Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain*, the Supreme Court held that a defendant could demonstrate a constitutional violation only upon a showing of systematic exclusion of blacks from jury panels over a period of time. *Id.* at 227, 85 S.Ct. at 839. Under *Swain*, "a defendant could not establish such a violation solely on proof of the prosecutor's action at his own trial." *Allen*, supra 478 U.S. at 258, 106 S.Ct. at 2880.

In support of his equal protection claim, petitioner has asserted only that the state used its peremptory challenges to exclude black prospective jurors *in this case;* he has not alleged that the state systematically used its peremptory challenges to discriminate against blacks over a period of

claims have not been presented to the state courts. Specifically, while petitioner raised the claim of ineffectiveness of counsel in the state system, he now asserts three additional bases for the claim of constitutionally deficient counsel: (1) trial counsel did not object to the all-white composition of the jury; (2) trial counsel failed to ascertain on *voir dire* that Edward Danos, who served as foreman of petitioner's jury, was a former police officer; and (3) trial counsel failed to object to the dismissal of a "Witherspoon Venire person." Because these allegations do not raise a colorable constitutional issue and because respondent has not asserted a nonexhaustion defense, we find that the interests of comity and federalism would be

better served by addressing the merits of petitioner's application than by dismissing the petition for failure to exhaust state remedies. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

**2.** It has been suggested that the *Allen* holding is no longer binding authority following the Supreme Court's opinion in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). This view of *Griffith* has been explicitly rejected by the Fifth Circuit. *See Procter v. Butler*, 831 F.2d 1251, 1254–55 n. 4 (5th Cir. 1987), *cert. denied,* — U.S. —, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988).

time. Consequently, petitioner's claim is without merit.

### 2. Jury Instructions

■ The judge presiding over petitioner's trial instructed the jury that "[t]he law holds that a sane person is presumed to intend the natural and probable consequences of his own deliberate acts. Consequently, it is murder if a sane person intentionally assaults another in such a manner as would likely cause death or would likely cause serious bodily harm." Petitioner, relying on the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), maintains that this instruction impermissibly shifted the burden of proof to the defendant on the issue of intent. In *Sandstrom*, the court held that an instruction identical in substance to the one given in this case was unconstitutional. However, because petitioner's trial counsel did not contemporaneously object to the instruction, the claim has been procedurally defaulted as a matter of state law. *See* LSA–C.Cr.P. art. 841.

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that, absent a showing of "cause" and "prejudice," federal habeas review is barred if the petitioner fails to comply with a state contemporaneous objection rule at trial. Petitioner alleges that the state procedural default was the result of the ineffectiveness of trial counsel. Because we hold below that petitioner's trial counsel was not constitutionally ineffective, we find no cause for counsel's failure to object to the jury charge and are therefore precluded from addressing the *Sandstrom* issue. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ In any event, petitioner's intent to kill or inflict great bodily harm upon his victim was not contested at trial. The only issue at trial was petitioner's motive for shooting Dauenhauer; intent was not disputed. Once the jury rejected petitioner's claim of self-defense, "the jury could not logically have concluded that he fired the weapon without intent at least to inflict a grave bodily injury." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir.1985). Thus the court's use of the burden-shifting charge condemned in *Sandstrom* was harmless beyond a reasonable doubt. *See Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

### 3. Insufficient Evidence

■ Petitioner argues that the state did not present sufficient evidence to support a jury finding that he possessed specific intent to kill. We find, to the contrary, that a finding of intent to kill or inflict great bodily harm is adequately supported by the record.

In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that due process requires that criminal convictions be based upon sufficient evidence. In determining whether a conviction is supported by sufficient evidence, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 318–19, 99 S.Ct. at 2789. In applying the *Jackson* standard, the court must accept the credibility choices of the jury. *United States v. McKenzie*, 768 F.2d 602 (5th Cir.1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

The testimony at petitioner's trial leaves no doubt that petitioner intended to kill or inflict great bodily injury. As indicated above, intent was not a disputed issue at trial. All of the witnesses to the shooting remembered hearing three to five shots. Two police officers who were several blocks away from the scene of the shooting heard three shots in rapid succession and then two more. A witness to the shooting testified that the victim fell to the ground after the first shot, that petitioner continued to walk toward and shoot him, and that petitioner stood over the victim while he was on the ground and shot him a fourth time. Petitioner himself admitted to firing three shots at his victim. Certainly, based on this record, a reasonable jury could have

concluded beyond a reasonable doubt that petitioner possessed the requisite intent.

### 4. Biased Juror

█ Petitioner maintains that he was denied the right to a fair and impartial jury because Edward Danos, Jr., the foreman of petitioner's jury, was a former police officer and did not disclose that fact on *voir dire*. We find this claim to be without merit.

Before beginning the examination of prospective jurors for petitioner's trial, the court explained the jury selection process to the venire. During the course of that explanation, the court noted:

> Y'all may have noticed that we had a New Orleans policeman in here this morning. One of the exemptions is a member of a paid fire or police department; he availed himself of that exemption. He simply had to say, 'I don't want to serve,' and that was it. The likelihood of The Court or anyone letting a police officer serve as a juror is pretty rare. That's his business. So, you kind of have to figure that there might be some persuasion there on his part. We don't say that they automatically would do one thing or another.

The juror in question was in the first group of prospective jurors to be questioned. During the *voir dire*, he informed the court that he was retired. At that point, the judge asked, "What was your former occupation, Mr. Danos?" Danos responded simply that he "worked for Avondale." Later, counsel for the state noted, "Mr. Danos, I think you said you worked for Avondale before you retired." This was confirmed by Danos.

Defense counsel subsequently asked the prospective jurors, including Danos, as a group, "And, none of you people—do any of you have any close friends or relatives who are members of the police department?" Three prospective jurors responded. An unidentified woman noted that her father was a retired policeman; another answered that she had a cousin on the

police force; and, a third stated that his brother-in-law was on the New York City Police Department. Each of these three was questioned further by defense counsel concerning connections with law enforcement. Eventually, the unidentified of the three was challenged peremptorily by the defense, and the other two were accepted by both parties.

Before the jury returned from its deliberations during the sentencing phase of the trial, it came to the attention of defense counsel that Danos had formerly worked as a police officer. Thereafter, counsel for the defendant made an oral motion for a mistrial. In support of the motion, defense counsel argued that the defense was prejudiced because Danos, in failing to volunteer his past association with law enforcement, was less than honest on *voir dire*. The court denied the motion, finding that Danos had not answered incorrectly any questions posed to him on *voir dire* and that his former employment as a police officer did not constitute cause for challenge. The court's ruling on the motion for mistrial was affirmed on appeal by the Louisiana Supreme Court. *State v. Riggins*, 388 So. 2d 1164 (La.1980).

It is manifest that a defendant in a criminal case is entitled to an unbiased jury. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The Supreme Court has held that a habeas petitioner who alleges juror partiality is entitled to a hearing in which he may prove actual bias. *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In this case, however, petitioner cannot make a showing of actual bias and is therefore not entitled to a hearing for that purpose.

Petitioner's counsel has advised the court that Danos is deceased. Without the testimony of Danos, petitioner simply cannot demonstrate that Danos's impartiality was affected by his former employment as a police officer. Consequently, a hearing on the issue would amount to nothing more than a hollow formality in which we decline to engage.[3]

**3.** Respondent contends that, due to the death of

Danos, the state has been prejudiced in its de-

Presumably as an alternative to finding actual bias, petitioner urges the court to presume bias on the part of Danos. In so doing, petitioner relies on the Supreme Court's decision in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). In *McDonough,* a civil case, the court enunciated the standard for granting a new trial in cases where pertinent information was not disclosed on *voir dire:*

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 556, 104 S.Ct. at 850. As petitioner points out, the Fifth Circuit has recently found this standard to be applicable in criminal cases. *United States v. Scott,* 854 F.2d 697 (5th Cir.1988).

We are not convinced that the *McDonough* standard is applicable in habeas cases. Errors which do not rise to the level of constitutional violations are not cognizable in habeas corpus proceedings. 28 U.S.C. § 2254; *Smith,* supra 455 U.S. at 221, 102 S.Ct. at 948. "Before a federal court may overturn a [state] conviction ... it must be established not merely that the [court's action] is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In federal cases such as *McDonough* and *Scott,* on the other hand, an appellate court may exercise "the so-called supervisory power ... to review proceedings of trial courts and to reverse judgments of such courts which the appellate court concludes were wrong." *Id.* Thus, absent language

from the Supreme Court that the *McDonough* decision was constitutionally compelled, it is not clear that the *McDonough* standard for new trial is anything more than an exercise of the Court's supervisory power. Nevertheless, because we find that petitioner cannot satisfy the *McDonough* criteria, we need not decide whether the *McDonough* standard is of constitutional stature.

Under the *McDonough* test, the court's first consideration is whether the juror "failed to answer honestly a material question on *voir dire.*" *McDonough,* supra at 556, 104 S.Ct. at 850. It cannot reasonably be argued that Danos answered incorrectly any question posed to him on *voir dire.* After he revealed that he was retired, Danos was asked about his former occupation and responded that he worked for Avondale. This certainly cannot be interpreted as a dishonest answer. Petitioner does not dispute that Danos in fact retired from Avondale but maintains that he should have also disclosed his former employment as a police officer. However, no reasonable retiree would construe a question as to his former occupation to refer to every job he ever held. Hence, the answers given by Danos to the questions concerning prior employment cannot be considered dishonest.

Later during the *voir dire,* Danos and other prospective jurors as a group were asked whether they had friends or relatives "who are members of the police department." Petitioner views Danos's silence in response to this question as a dishonest concealment of his former employment as a law enforcement officer. The question, however, elicits information, not about the jurors' former employment, but about their friends and relatives who were members of the police force at that time. Danos's failure to mention his past association with law enforcement cannot be considered a dishonest answer to that question. As the Eleventh Circuit has found, "[t]here is no

---

fense of this claim by petitioner's unreasonable delay in filing this habeas petition. *See* Rule 9(a) of the Rules Governing Section 2254 Cases. Because we conclude that petitioner is not entitled to relief, we do not reach the issue of delay.

However, we note that respondent's argument is compelling and that, should the appellate court reverse our decision on the merits, we would consider the prejudicial delay issue.

merit to the argument that the juror's prior employment by a law enforcement agency was raised implicitly by the question regarding friends in law enforcement." *United States v. Tutt,* 704 F.2d 1567, 1569 (11th Cir.1983), *cert. denied,* 464 U.S. 855, 104 S.Ct. 174, 78 L.Ed.2d 156 (1983).

Petitioner concedes that no question posed to Danos was precisely tailored to discover whether he was formerly employed as a police officer. Nevertheless, petitioner insists that Danos's failure to reveal his former ties with law enforcement satisfies the first prong of the *Mc-Donough* standard:

> In light of the clear import of the judge's general instruction to the jury and the repeated questioning of jurors about their relationships either personal or familial with police officers, Mr. Danos failed to provide honestly material information on voir dire. Thereafter his motive is suspect as he is certainly put squarely on notice that there was serious concern about a policeman sitting in judgment of defendants in a criminal case.

Defendant's Memorandum dated December 30, 1988, at 6. We do not agree. A juror's failure to disclose information for which he was not asked does not meet the *McDonough* test; the *McDonough* language refers specifically to failure to answer honestly "a material question." Petitioner does not cite, nor have we found, a single case which supports the position that a juror's failure to volunteer information suffices to satisfy the first step in the *McDonough* analysis. On the contrary, a number of circuit court cases suggest that a juror's failure to volunteer information does not justify a presumption of juror bias. *See United States v. O'Neill,* 767 F.2d 780 (11th Cir.1985); *Tutt,* supra; *United States v. Rhodes,* 556 F.2d 599 (1st Cir.1977).

In addition, we find that Danos's failure to voluntarily disclose his former status as a police officer is neither unreasonable nor indicative of an improper motive. As petitioner points out, Danos was present when several jurors were questioned as to their ties to law enforcement. Moreover, Danos and the other jurors were informed by the court that policemen were entitled to a personal exemption and that it would be unlikely that a policeman would be allowed to serve even if he waived his exemption. However, we note that the court also told the prospective jurors that policemen need not avail themselves of the personal exemption and that policemen were not automatically disqualified as jurors. Furthermore, the court did not indicate to the venire that *former* policemen would be unlikely to be accepted as jurors. Under these circumstances, we cannot conclude that Danos was unreasonable or dishonest in failing to reveal his past service as a policeman.

The second prong of the *McDonough* test, like the first, is not satisfied in this case: petitioner has not shown that the information concerning the juror's former employment "would have provided a valid basis for a challenge for cause." *McDonough,* supra at 556, 104 S.Ct. at 850. In fact, in ruling on the motion for mistrial, the trial judge specifically held that he would not have sustained a challenge to for cause as to Danos.

*5. Ineffective Assistance of Counsel*

Petitioner's final ground for relief is that his counsel's performance was constitutionally deficient in five respects: (1) appellate counsel failed to raise a number of arguably meritorious issues on appeal; (2) trial counsel did not object to the burden-shifting jury instruction given by the trial court; (3) trial counsel did not object to the all-white composition of the jury; (4) trial counsel failed to ascertain on *voir dire* that Danos was a former police officer; and (5) trial counsel failed to question a prospective juror who expressed objection to the death penalty and did not object to excusal of the prospective juror for cause.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the Supreme Court established a two-pronged test for evaluating claims of ineffectiveness of counsel: a defendant seeking relief must demonstrate that counsel's performance was deficient

**1212**

and that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

■We address separately each of petitioner's claims of ineffective assistance of counsel. First, petitioner maintains that his appellate counsel failed to raise several arguably meritorious issues on appeal. Specifically, petitioner points to counsel's failure to present all five assignments of error to the appellate court.

Petitioner is correct in asserting that appellate counsel did not brief all assignments of error. However, a brief review of the record reveals that the defaulted claims are patently frivolous. Without detailing the assignments of error which were not raised on appeal, suffice it to say that petitioner "has failed to demonstrate a reasonable probability that but for counsel's [alleged] unprofessional errors, the result of [petitioner's] appeal would have been different." *Lockhart v. McCotter,* 782 F.2d 1275, 1283 (5th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987). Moreover, even if the abandoned claims are not frivolous, petitioner has not shown that counsel's failure to raise those issues constitutes deficient representation. The Supreme Court has squarely held that counsel is not obligated to raise on appeal every nonfrivolous issue:

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible or at most on a few key issues.... A brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions.... For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim ... would disserve the very goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Jones v. Barnes,* 463 U.S. 745, 751–754, 103 S.Ct. 3308, 3312–3313, 77 L.Ed.2d 987 (1983).

■ Petitioner's second basis for his ineffective assistance of counsel claim is that trial counsel did not object to the burden-shifting jury instruction given by the trial court. We find that this could not have resulted in prejudice to the defense. We have already held that it was harmless error for the trial judge to instruct the jury with the *Sandstrom* charge; "[i]f an error is shown to be harmless, then the error cannot satisfy the prejudice prong of *Strickland." Johnson,* supra at 1049.

■ Third, petitioner charges that his attorney was deficient in failing to object to the all-white composition of the jury. Such an objection would have been in vain unless counsel could have satisfied the "difficult-to-meet standard of *Swain v. Alabama." Procter,* supra at 1255. As we have previously noted, petitioner has not alleged that counsel had a valid basis for objection under the then-governing doctrine of *Swain.* Consequently, petitioner has not met the prejudice prong of the *Strickland* standard.

■ As his fourth argument in support of his ineffectiveness of counsel claim, petitioner maintains that counsel should have ascertained on *voir dire* that Danos was a former law enforcement officer. This argument fails for two reasons. Petitioner has not demonstrated that his counsel's performance fell below an objective standard of reasonableness. No attorney can uncover every bit of pertinent information concerning every potential juror; some in-

formation will undoubtedly remain undisclosed to even the most diligent attorneys. Hence, we cannot conclude that counsel's performance was deficient in this respect. Moreover, petitioner has not demonstrated prejudice. Because petitioner cannot show actual bias on the part of Danos, there is no indication that the outcome of the trial would have been different without him on the jury.

 Finally, petitioner contends that his attorney failed to question a prospective juror who expressed objection to the death penalty and did not object to excusal of the prospective juror for cause. We find this argument unpersuasive for a number of reasons. Initially, we note that petitioner has not identified the venireman to whom he refers nor explained why the excusal of that venireman for cause was objectionable. This imprecision alone is sufficient to warrant dismissal of the claim: "mere conclusory allegations do not raise a constitutional issue in a habeas petition." *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983) (per curiam).

Also, the decision to accept or reject a juror is a matter of trial strategy. *See Wicker v. McCotter,* 783 F.2d 487 (5th Cir. 1986), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). Accordingly, we decline to second-guess counsel in choosing not to object to the dismissal of a venireman. Tactical decisions which ultimately prove unsuccessful do not render counsel's performance constitutionally deficient. *Williams v. Maggio,* 679 F.2d 381 (5th Cir. Unit A 1982) (en banc), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983).

Lastly, we find that petitioner has not demonstrated prejudice. Because petitioner was not sentenced to the death penalty, any improper excusal of prospective jurors on the basis of opposition to the death penalty was harmless. The Supreme Court's decision in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), supports this conclusion:

> We simply cannot conclude ... that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction.

*Id.* at 518, 88 S.Ct. at 1775–76. Thus, we find that "[i]t has not been shown that this jury was biased with respect to the petitioner's guilt." *Id.* at 518, 88 S.Ct. at 1775.