**Ernest James LOMBARD, Jr., Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.**

No. 86–2852.

United States Court of Appeals, Fifth Circuit.

April 6, 1989.

---

**1476**

Randy Schaffer, Houston, Tex., for petitioner-appellant.

Margaret Portman Griffey, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Ernest James Lombard, Jr. (Lombard), a Texas prisoner, appeals the district court's denial of his petition for habeas corpus relief under 28 U.S. C. § 2254. For the reasons set forth below, we reverse the district court's denial of Lombard's petition and remand with instructions to grant relief.

**Facts and Proceedings Below**

Lombard was charged in a Texas court with the October 4, 1971 robbery by assault of Iva Kennedy (Kennedy). In 1973, Lom-

bard entered a plea of not guilty and his case was set for trial by jury. At the commencement of *voir dire*, the trial court, calling the case for trial, stated, apparently in the presence of the jury panel, that Lombard was "charged with assault as habitual offender," and after the jurors were selected and sworn, but before evidence commenced, the state record reflects that "the indictment was read to the jury by the Assistant District Attorney." The indictment alleged the primary offense and also two prior felony convictions for the purpose of enhancement.

During the trial, Kennedy, her husband, and her maid identified Lombard as one of three individuals who robbed Kennedy in her home on October 4, 1971. Kennedy stated that Lombard and the two other men drove up to her house in a City of Houston Water Department truck and posed as employees of the Water Department to gain entry into the house. Thomas Fram, an employee of the Houston Water Department, testified that on the morning of the robbery, Lombard and two other men pointed a gun at him and forced him to surrender the Water Department truck that he was driving.

Lombard did not testify, nor did he present evidence. After the trial, the jury found him guilty on November 13, 1973. Thereafter, in January 1974, the court sentenced him to sixty-five years' confinement in the Texas Department of Corrections.

Lombard, on the day he was sentenced, filed an affidavit of indigency and requested that counsel be appointed to represent him on appeal. John Cahoon, Sr. (Cahoon), who had represented Lombard at trial pursuant to court appointment, was appointed on January 24, 1974 to represent him on appeal.[1] On appeal, Cahoon submitted a two-page appellate brief, which was filed with the trial court on February 6, 1975 and with the Texas Court of Criminal Appeals on October 15, 1975. This brief consists entirely (apart from caption, title, sig-

---

1. The appeal was an appeal as of right directly to the Texas Court of Criminal Appeals, having been taken before the time that the Texas inter-
mediate appellate courts were vested with jurisdiction over appeals in criminal cases.

nature, and certificate of service) of the following:

"TO THE HONORABLE JUDGE OF SAID COURT:

"Now comes ERNEST JAMES LOMBARD, JR., the Appellant in the above-numbered and entitled cause, and respectfully submits to this Honorable Court, DEFENDANT'S TRIAL BRIEF ON APPEAL, by and through his attorney, JOHN E. CAHOON, SR., appointed by the Court and would respectfully show unto the Court the following:

"The Appellant stands convicted in one (1) cause, to-wit: No. 179,796, entitled the State of Texas vs. Ernest James Lonbard [*sic*], Jr., the punishment assessed in a trial by a Court, on a plea of not guilty was sixty-five (65) years confinement in the Texas Department of Corrections; this was after the Defendant had been found guilty in a trial to a jury. This was an enhancement case pursuant to Article 62, V.A.P.C. The State also proved, at the punishment hearing, that the Appellant had been convicted of two prior felony criminal offenses.

"II.

"The Appellant was represented at trial by appointed counsel, JOHN E. CAHOON, SR., and that following his conviction, JOHN E. CAHOON, SR., was appointed at Appellant's request as Appellant's Attorney on appeal.

"III.

"After a diligent study of the Transcript and Statement of Facts in this cause, counsel for Appellant is of the opinion that Appellant's trial and subsequent conviction was conducted as provided by the Constitutions of the Sovereign State of Texas and of the United States of America, and that all of the rights and privileges guaranteed to the Appellant were invoked in his behalf. Counsel for Appellant is unable to, in good faith, urge upon this Court any

Points of Error that would require the reversal of Appellant's conviction.

"*Conclusion*

"Counsel for Appellant respectfully submits that he has diligently reviewed the record in this cause and the law applicable thereto and is of the opinion that the Appellant's Appeal is without merit. Further, that the Appellant has received all that he is entitled to receive by way of Court appointed counsel for purposes of the Appeal, (Anders vs. State of California), that the Counsel is of the opinion that had he been employed by the Defendant and paid a usual and customary fee for the services rendered or to be rendered that he would in all good conscience be required to advise Appellant that his appeal from the Judgment and Sentence in this cause is without merit.

"WHEREFORE, PREMISES CONSIDERED, the Appellant's Attorney on appeal, prays that this Honorable Court accept this brief.

"Respectfully submitted,"

A copy of this brief was served on Lombard. The state's reply brief was filed with the trial court in August 1975, being then served on Cahoon and on Lombard personally, and with the Court of Criminal Appeals on October 16, 1975.[2] This three-page brief merely stated in conclusory form that the brief submitted by Cahoon was correct and that the conviction and sentence should be affirmed. The last page of the brief advised Lombard (as Cahoon had apparently not) that he was entitled to himself file a *pro se* brief and that if he wished to do so a copy of the record would be furnished him.

After filing his above-referenced brief, Cahoon apparently took no further action in the case. Lombard never filed a *pro se* brief.

The record was filed with the Court of Criminal Appeals on October 16, 1975, and on December 17, 1975, it issued an unpub-

---

2. The record was completed on October 10, 1974. Cahoon procured from the trial court several extensions of time to file his brief until February 13, 1975. The state likewise procured from the trial court several extensions of time within which to file its brief.

lished per curiam opinion affirming the conviction and sentence, noting that after examination of the record and Cahoon's brief it found that "the appeal is wholly frivolous and without merit," and that there was "nothing in the record that should be reviewed as unassigned error in the interest of justice."

The court observed that while Cahoon's brief did not advance any arguable grounds of error, it did contain "a professional evaluation of the record" demonstrating why there were no such grounds. The court thus found that the brief met the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).[3]

Lombard subsequently challenged the conviction in two separate state court habeas corpus applications. In these applications, Lombard alleged that he was denied due process and a fair trial because the trial court advised the jury panel at the commencement of the *voir dire* examination that Lombard was charged as an habitual offender. He also alleged that he was

denied effective assistance of counsel at trial because, among other things, Cahoon failed to object to: (1) the trial court's comment to the jury panel that Lombard was charged as an habitual offender; (2) testimony that Lombard committed an extraneous armed robbery of the Houston Water Department employee; and (3) the omission from the jury charge of an element of the offense, namely, that the complainant owned the property that was stolen. Lombard also alleged that he was denied effective assistance of counsel on appeal because Cahoon filed a deficient "frivolous appeal" brief that failed to raise the above points of error that would have entitled him to a reversal of the conviction. According to Lombard, Cahoon's two-page appellate brief "was tantamount to no brief at all."

The Court of Criminal Appeals denied both applications for habeas relief without opinion.[4] When the applications were denied by the state court, Lombard filed the present petition for federal habeas relief in

---

**3.** The entire Court of Criminal Appeals opinion is as follows:

"This is an appeal from a conviction for the offense of robbery by assault under the prior penal code. Appellant was found guilty by a jury on his plea of not guilty. The trial court assessed punishment at 65 years in the Texas Department of Corrections, failing to find for the State on the enhancement allegations.

"Appellant's court appointed counsel has filed a brief in which he concludes that the appeal is wholly frivolous and without merit. Appellant has been served with a copy of his court appointed counsel's brief, however, appellant's brief does not recite that the indigent appellant was advised of his right to file a pro se brief. The State in order to insure that this appeal is correctly handled, advised the appellant in the State's brief of his right to file a pro se brief if he desires to do so. A copy of the State's brief was served on the appellant's court appointed counsel and upon the appellant. The appellant has not filed a pro se brief.

"The brief of counsel does not advance any arguable grounds of error, but does contain a professional evaluation of the record demonstrating why, in effect, there are no arguable grounds of error to be advanced. The brief meets the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Gainous v. State*, 436 S.W.2d 137 (Tex.Cr.App.1969). See *Currie v. State*, 516 S.W.2d 684 (Tex.Cr.App.1974).

"We have reviewed the record and counsel's brief and find that the appeal is wholly frivolous and without merit. Further, we find nothing in the record that should be reviewed as unassigned error in the interest of justice. Art. 40.09 (13) V.A.C.C.P.

"There being no reversible error, the judgment is affirmed."

**4.** Both state habeas applications were initially considered by the state trial court, in each instance solely on the basis of the state record and without any hearing or considering any other evidence or affidavits or the like. In the first state habeas, the trial court made no recommendation to the Court of Criminal Appeals but found that on direct appeal Cahoon "failed to raise possible grounds of error relating to the denial of petitioner's constitutional right to a speedy trial, the omission of an element of the offense from the jury charge, a comment by the visiting judge to the jury panel that petitioner was on trial as an habitual criminal, and the admission of an extraneous offense." In the second state habeas, the trial court found "that Applicant received effective assistance of counsel at trial and on the primary case," did not expressly address ineffective assistance of counsel on appeal, and recommended that the Court of Criminal Appeals deny relief. No issue of failure to exhaust state remedies has been raised.

the district court. In this petition, his sole claim was that he was denied effective assistance of counsel on appeal. His arguments on this point were essentially the same as those advanced in his state habeas petitions. The district court referred the case to a magistrate, who reviewed the state record and concluded that Cahoon's "frivolous appeal" brief constituted a total denial of counsel. The magistrate therefore recommended that Lombard be granted an out-of-time appeal due to ineffective assistance of counsel on appeal.

The district court agreed that Cahoon's two-page appellate brief did not amount to competent assistance [5] and that Cahoon "exercised no professional judgment since no strategic grounds existed for failing to object at trial to or raise on appeal" at least some of the points that Lombard identified in his petition. Indeed, the district court expressly acknowledged that Lombard clearly had meritorious claims that Cahoon had failed to raise. Nonetheless, it denied Lombard's petition on the ground that he had not shown he was prejudiced by his counsel's failure to raise the claims on appeal. Quoting *Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987), the district court stated that "[i]t is not sufficient that the petitioner show his counsel fell well below the minimum standard of competency; he must also show that he was prejudiced by counsel's deficient performance." In this case, the district court found that given the overwhelming evidence of guilt against Lombard, he was not in any way prejudiced by Cahoon's failure to raise the claims on appeal. Lombard now appeals the district court's decision.

### Discussion

Lombard, who has been represented by counsel here and below, claims that he was denied effective assistance of counsel on his direct state appeal, and more specifically that: (1) the two-page document that

Cahoon filed on appeal did not even meet the minimum standards for a "frivolous appeal" brief because it did not discuss the evidence, refer to the record, or set forth any arguable grounds of error that might support an appeal (nor did it explain why there were no arguable grounds of error, if such was believed to be the case); and (2) Cahoon failed to raise on appeal points of error which would have entitled Lombard to a reversal of his conviction. The specific points of error that Lombard claims should have been raised are: (1) the jury charge was fundamentally defective in that it failed to require the jury to find that Kennedy owned the stolen property; and (2) Lombard received ineffective assistance of counsel at trial. In the latter connection, Lombard asserts that he was denied effective assistance of counsel at trial because Cahoon failed to object to the comments by the trial court that Lombard was charged as an habitual offender and to the prosecutor's reading of the indictment which reflected Lombard's previous convictions, and that he failed to object to the improper admission of the extraneous armed robbery of the Water Department employee allegedly committed by Lombard prior to the commission of the robbery alleged in the indictment. Lombard also contends that had Cahoon raised these issues on appeal, he would have been entitled to reversal of his conviction notwithstanding Cahoon's failure to object at trial; thus, he argues that Cahoon's failure to raise these points on appeal was clearly prejudicial. Lombard contends, however, that where, as he claims to be the situation here, a petitioner suffers a total denial of assistance of counsel on appeal, he should not be required to show prejudice in order to obtain habeas relief.

■ An accused is constitutionally entitled to the effective assistance of counsel on a direct appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The primary question

---

5. The district court specifically noted that "the appellate brief filed in this case was of no more aid than the 'no merit' letter filed by the petitioner's attorney in *Anders v. California*, 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967)." The no merit letter in *Anders* was held to be constitutionally inadequate.

here is whether or to what extent prejudice must be shown from the denial of such right in order for the accused to obtain habeas relief, although this is to some extent intertwined with the nature and extent of the denial.

We conclude that, as explained in more detail below, there were nonfrivolous issues which should have been raised on the direct appeal and that Lombard received ineffective assistance of counsel on appeal because his counsel only filed a brief which in substance said, without explanation, that the appeal was without merit and wholly failed to call attention to or discuss any of the potential issues in the case. Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), as reiterated in the Supreme Court's recent decision in *Penson v. Ohio*, — U.S. —, 109 S.Ct. 346, 350, 102 L.Ed. 2d 300 (1988), even if appellate counsel determines that the appeal is frivolous she must, *inter alia*, file "a brief referring to anything in the record that might arguably support the appeal." We recognize that in many instances this can be a demanding task: if there is nothing of that kind in the record, it is difficult to point to something, and explaining why something is not an arguable issue may in certain circumstances come perilously close to arguing for the other side. *But see McCoy v. Court of Appeals of Wisconsin*, — U.S. —, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). However, we are not now faced with attempting to resolve such enigmas, for it is in any event clear that *if*, as here, there *are* one or more indisputably nonfrivolous issues for appeal, counsel must do more than simply file a wholly conclusory "no merit" brief which points to nothing whatever in the record. Because this is what Lombard's appellate counsel did—and is all that he did—it is clear that Lombard was denied effective assistance of counsel on appeal.

But, must Lombard demonstrate that this denial of the effective assistance of counsel prejudiced him, at least in the sense that had his counsel not been thus deficient his conviction would likely have been reversed? *Penson* provides the proper framework for analysis in this connection. In *Penson*, the Court distinguished between two types of denial of effective assistance of appellate counsel: first, those in which the deficiency consists of failure to raise (or properly brief or argue) one or more specific issues or the like; and second, those in which there has been an actual or constructive complete denial of any assistance of appellate counsel. 109 S.Ct. at 354. In the first type of case, prejudice must apparently be shown, as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the second type of case, prejudice is presumed, and neither the prejudice test of *Strickland* nor the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is appropriate. *Penson*, 109 S.Ct. at 354. We had applied a similar mode of analysis in *Hamilton v. McCotter*, 772 F.2d 171, 181–82 (5th Cir.1985). *See also Ricalday v. Procunier*, 736 F.2d 203, 209 n. 6 (5th Cir. 1984). In *Hamilton* and *Ricalday*, we held that the deficiency was of the first type, and declined to grant relief because the *Strickland* prejudice test was not met (we did not consider *Chapman*).

Here, counsel's deficiencies clearly come closer to fitting in the second or total denial of counsel category, than in the first category, that of counsel committing one or more discrete lapses from minimum professional standards. At the trial level, at least, it is clear that merely because counsel is physically present throughout does not necessarily mean that there has not been a total denial of counsel. *See United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) ("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable"). Here, Cahoon did *nothing* to attempt to aid Lombard's appeal, beyond the initial perfecting of the appeal itself. We are hence comfortable in not requiring Lombard to meet the *Strickland* standard of showing, at the least, that there is a reasonable probability that his conviction

would have been reversed had he had the effective assistance of appellate counsel.

We note, however, that there are some differences between this case and *Penson*. In *Penson*, the appellate court on direct appeal allowed counsel to *withdraw*, on the basis of a wholly deficient *Anders*-type letter, *before* it ever reviewed the record, and it denied the accused's request that other counsel be appointed; when it subsequently examined the record, it determined that there were "several arguable claims" and, apparently on the basis of one of these, reversed the conviction on one count although affirming the convictions and sentences on the other counts. 109 S.Ct. at 356. Thus in *Penson*, the accused was wholly without counsel while his case was under appellate consideration; moreover, it was determined that the case did in fact present some actual reversible error as to one count. Here, Cahoon never withdrew, and Lombard was never formally without counsel on his appeal; moreover, the Court of Criminal Appeals did not decide the case until it determined, after review of the record, that the appeal was "wholly frivolous." Further, as below noted, although there were clearly nonfrivolous issues which could have been urged on Lombard's appeal and we are unable to determine that Lombard's conviction would *not* have been reversed had he had effective assistance of appellate counsel, we are likewise unable to determine the converse. However, we conclude that these considerations do not suffice to require Lombard to show *Strickland*-type prejudice; Lombard, in a functional sense, was afforded almost no appellate representation whatever, and there *were* nonfrivolous appeal issues which we cannot say with full confidence would not have resulted in reversal had they been raised and properly argued by competent appellate counsel. Lombard therefore need not, as he would have to if *Strickland* applied, discharge the burden of convincing

us that, at the least, reversal was reasonably probable had he been properly represented on appeal.[6]

In other words, in Lombard's case, the state has been unable to make a *Chapman*-type harmless error showing, for we are unable to conclude beyond a reasonable doubt that his conviction would not have been reversed had he had effective assistance of appellate counsel. We therefore do not decide whether the above-noted differences between this case and *Penson* are sufficient to authorize denial of habeas relief had the state been able to show that the appellate Sixth Amendment violation was harmless beyond a reasonable doubt.

The state relies primarily on *Lockhart*, as did the district court below. In *Lockhart*, appellate counsel raised no issues and only filed an "affidavit of counsel" saying the appeal had no merit. 782 F.2d at 1283 & n. 15. It is doubtful, however, that *Lockhart* entirely survives *Penson*. See *id.*, 109 S.Ct. at 354 n. 10, citing *Lockhart* with apparent disapproval. Moreover, in *Lockhart*, we considered and actually rejected on their merits the very claims of constitutional error at trial which it was asserted that counsel on direct appeal was defective for not raising, although we likewise determined that those issues were not frivolous. 782 F.2d at 1283 & n. 15. But, here we are unable to conclude that Lombard's claims would have been rejected on direct appeal.

The issues that Lombard claims should have been raised on appeal are certainly not frivolous claims, and at the time of appeal they may very well have led to a reversal of Lombard's conviction. Perhaps the best example is the issue regarding the defective jury charge. As Lombard correctly points out, although the indictment alleged that Kennedy was in fact the owner of the items taken, the jury charge did not

---

**6.** We note in this connection *Penson*'s statement:

    "Although petitioner has been represented by counsel in this Court, we decline to sit in place of the Ohio Court of Appeals in the first instance to determine whether petitioner was prejudiced as to any appellate issue by reason

of either counsel's failure to file an *Anders* brief or the court's failure to appoint new counsel. [Citation omitted.] It would be particularly inappropriate for us to do so in a case raising both factual issues and questions of Ohio law." 109 S.Ct. at 353 n. 9.

in any manner address ownership of these items.[7] As the state admits, under former Texas Penal Code, article 1408, the Texas robbery statute Lombard was charged with violating, ownership of the property taken, not merely in whose possession it was, was a necessary element of the offense. *Lucero v. State*, 502 S.W.2d 128 (Tex.Crim.App. 1973) (first case); *Snow v. State*, 156 Tex. Cr.R. 49, 238 S.W.2d 966 (1951). *See also Ward v. State*, 520 S.W.2d 395, 397 (Tex. Crim.App.1975); *Reese v. State*, 531 S.W.2d 638, 640 (Tex.Crim.App.1976).[8] Moreover, when Lombard was tried and when his conviction was affirmed, it was generally, though perhaps not uniformly, held that the omission from the court's charge to the jury of any necessary element of the offense constituted "fundamental error" resulting in automatic reversal of the conviction. *See, e.g., Windham v. State*, 530 S.W.2d 111 (Tex.Crim.App.1975); *Bradley v. State*, 560 S.W.2d 650, 652 (Tex.Crim. App.1978); *West v. State*, 567 S.W.2d 515, 517 (Tex.Crim.App.1978); *Cumbie v. State*, 578 S.W.2d 732, 733 (Tex.Crim.App.1979). Such a defect in the jury charge could be "fundamental error" notwithstanding that the indictment alleged all necessary elements and the charge contained a general reference such as "as alleged in the indictment." *See Bradley*, 560 S.W.2d at 652. Moreover, if a defect in the jury charge amounted to "fundamental error," the absence of objection at trial normally did not obviate the requirement that the conviction be reversed. *See, e.g., Ross v. State*, 487 S.W.2d 744 (Tex.Crim.App.1972); *Long v. State*, 548 S.W.2d 897, 899 (Tex.Crim.App. 1977); *Robinson v. State*, 553 S.W.2d 371, 374–75 (Tex.Crim.App.1977).[9] As reflected

7. The indictment, after setting out the two prior felony convictions (one for burglary and one for keeping a gambling house), alleges the offense in question as follows:

"[O]n or about the 4th day of October, A.D. 1971, in said County of Harris and State of Texas, and after the judgment of conviction in said cause No. 25392 and the judgment of conviction in said cause No. 27162 had become final, the said ERNEST JAMES LOMBARD, JR., who is the same person so twice formerly convicted, did in and upon Iva Kennedy make an assault, and did then and there by said assault and by violence and by putting the said Iva Kennedy in fear of life and bodily injury, fraudulently and against the will of the said Iva Kennedy take from the person and possession of the said Iva Kennedy, five (5) pistols, one (1) rifle, jewelry, money, the same being then and there the corporeal personal property of the said Iva Kennedy with the intent then and there to deprive the said Iva Kennedy of the value of the same and to appropriate it to the use of him, the said ERNEST JAMES LOMBARD, JR."

The jury charge reads in pertinent part:

"Now, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 4th day of October, 1971, the defendant, ERNEST JAMES LOMBARD, JR., did then and there unlawfully make an assault upon the person of IVA KENNEDY and did then and there by said assault, or by violence to the said IVA KENNEDY, or by putting the said IVA KENNEDY, in fear of her life or bodily injury, fraudulently take from the person or possession of the said IVA KENNEDY, without her consent, the personal property alleged in the indictment, to wit, five pistols, one rifle, Jewelry & Money, with the intent of the defendant to appropriate the same to the use or benefit of the defendant and with the intent to deprive the said IVA KENNEDY of the value of the same, you will find the defendant guilty of robbery."

8. Effective January 1, 1974, after Lombard's alleged offense, indictment, and trial, article 1408 was repealed and replaced by section 29.02 of the current Texas Penal Code. Under section 29.02, ownership of the property is not an element of the offense which must be alleged in the indictment. *Reese*, 531 S.W.2d at 640.

9. We recognized this rule in *Ricalday*. *See* 736 F.2d at 207. Indeed, in that case we determined that since the defect in the charge amounted to fundamental error, Texas courts would have reversed Ricalday's conviction even though he failed to object to the defective charge at trial. *Id.* We nevertheless held that Ricalday was not entitled to habeas relief because he was not prejudiced by the deficient performance of his appellate counsel. Specifically, we determined that the evidence of guilt was so overwhelming there was no reasonable probability that the fact finder would have had a reasonable doubt as to Ricalday's guilt under proper instructions. *See id.* at 209. We concluded that since Ricalday was not prejudiced by counsel's failure to object at trial, he was not prejudiced by counsel's failure to raise the same issue on appeal. *Id.*

However, in *Ricalday*, we were careful to point out that the case was not one in which there was effectively no appellate counsel at all. *See id.* at 209 n. 6. Because *Ricalday* was not such a case, we found that "the ultimate focus of inquiry must be on the fairness of the proceeding" and on whether the "result of the particular proceeding is unreliable because of a breakdown in the adversarial process." *Id.*

in note 7, *supra,* the indictment alleged that the items taken by Lombard were the property of the victim, Kennedy, but the jury charge did not contain any requirement that in order to convict the jury must find that such items were Kennedy's property or were owned by or belonged to her. Accordingly, under the above authorities, it would appear that this omission in the charge—even though apparently not objected to at trial—may well have amounted to "fundamental error" which would have resulted in the reversal of Lombard's conviction had it been called to the attention of the Court of Criminal Appeals when it considered the appeal.

We recognize that more recently the Texas Court of Criminal Appeals has made a thorough reexamination of the "fundamental error" doctrine as applied to the jury charge, and substantially narrowed it, largely eliminating the concept of "automatic" reversal. *Almanza v. State,* 686 S.W.2d 157, 172–74 (Tex.Crim.App.1984). However, the change—or clarification—in Texas law represented by *Almanza,* decided about nine years after the affirmance of Lombard's conviction, does not change the fact that when his appeal was taken, and when his conviction was affirmed, this omission in the charge constituted a clearly nonfrivolous basis for appeal which, had it been called to the attention of the Court of Criminal Appeals at that time, might well have resulted in reversal of his conviction. Certainly we are unable to say with assurance that the conviction would then have been affirmed even if the omission in the charge had been raised as a ground of error on appeal.

Likewise, the claim of ineffective assistance of trial counsel was not frivolous. As we noted in *Lockhart,* a claim of ineffective assistance of trial counsel can be asserted on direct appeal in Texas. *See* 782 F.2d at 1283 n. 14. If that claim had been properly asserted on appeal, it too may

have led to a reversal of Lombard's conviction. As noted, Lombard contends that he was denied effective assistance of counsel at trial because Cahoon, as trial counsel, failed to object to: (1) the habitual offender comments by the trial court and the prosecutor's reading to the jury of the indictment which contained several allegations of Lombard's prior convictions (*see* note 7, *supra* ); and (2) the improper admission of the extraneous armed robbery. In *Heredia v. State,* 508 S.W.2d 629 (Tex.Crim. App.1974), the Texas Court of Criminal Appeals found that reversal of a conviction is required where the trial court permits the jury to learn, at the commencement of the guilt or innocent stage of the trial, that the defendant has been convicted of one or more prior felony offenses alleged for enhancement, provided the defendant timely objects. *See* article 36.01, subdivision 1, Texas Code of Criminal Procedure.[10] *See also Frausto v. State,* 642 S.W.2d 506, 508–09 (Tex.Crim.App.1982). *Heredia* indicates, however, that such an objection may not be raised for the first time on appeal. *See Heredia,* 508 S.W.2d at 630. Thus, Cahoon's failure to object at trial to the references to Lombard's prior convictions may well have been a costly error. Had the issue of trial counsel's ineffectiveness been raised on appeal, the Texas Court of Criminal Appeals might have determined that such an error alone constituted ineffective assistance of trial counsel warranting reversal of the conviction.

We cannot conclude that it is reasonably probable that the Texas Court of Criminal Appeals, when it acted on Lombard's appeal in December 1975, would have reversed, instead of affirmed, his conviction had Cahoon properly asserted these arguments on the appeal. Moreover, had *Almanza* been on the books then, it is obvious that the chances for reversal would have been less. But by the same token, we cannot conclude beyond reasonable doubt

---

(quoting *Strickland,* 104 S.Ct. at 2069). But since the present case is one in which there was in substance a total denial of effective appellate counsel, we do not think that the *Ricalday* holding should control or that its reasoning should necessarily apply.

**10.** Trial is bifurcated into separate guilt or innocence and punishment stages. *See* article 37.07, Texas Code of Criminal Procedure.

that had these arguments been asserted on appeal the Texas Court of Criminal Appeals would nevertheless have affirmed.[11] Assuming some part of *Lockhart* remains viable after *Penson,* this distinguishes *Lockhart,* for there we in essence *did* determine that all the habeas petitioner's contentions would have been rejected had they been raised on direct appeal. Accordingly, we conclude that *Lockhart* does not suffice to justify denial of habeas relief in this case.

For the reasons stated, the present circumstances are sufficiently analogous to those in *Penson* as to prevent utilization of the *Strickland* prejudice test. Since we have determined that there *were* nonfrivolous direct appeal issues and that we cannot conclude beyond a reasonable doubt that reversal on direct appeal would not have occurred but for the virtually total default by appellate counsel, Lombard is therefore entitled to relief; we accordingly need not and do not determine whether there would be any entitlement to such relief if there had been no nonfrivolous appellate issue or, assuming *arguendo* that the inquiries differ, if we could and did determine beyond reasonable doubt that the conviction would have been affirmed on direct appeal had there been fully effective appellate counsel.

## Conclusion

We conclude that although Lombard in form had the assistance of counsel on his direct appeal, counsel's performance was so pervasively defective, in that he took virtually no action at all on his client's behalf despite the presence of at least two clearly nonfrivolous appellate issues, that Lombard in substance was denied any effective assistance of counsel whatever on his direct appeal. Moreover, we are unable to conclude beyond reasonable doubt that had Lombard been furnished effective assistance of counsel his conviction would nevertheless have been affirmed. These circumstances entitle Lombard to habeas

relief unless the state affords him, within a reasonable time, an appropriate out-of-time appeal. Accordingly, the district court's judgment denying habeas relief is reversed, and the cause is remanded to the district court so that it may enter judgment granting the writ of habeas corpus issue unless the state affords Lombard an out-of-time direct appeal within such reasonable time as the district court may fix, and for further proceedings not inconsistent herewith.

REVERSED AND REMANDED.

GOLDBERG, Circuit Judge, specially concurring:

It is with ebullient delight that I concur in the majority's result in this case. However, I find *Penson v. Ohio,* —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), to be more than a closely analogous case; I believe Mr. Lombard was constructively denied the effective assistance of appellate counsel, and as such, his situation squarely falls under the protection of *Penson* and *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

*Penson* creates two categories of denial of effective assistance of appellate counsel. The first category encompasses criminal defendants who are actually or constructively denied the assistance of an advocate for their first appeal as of right. In such situations, prejudice is presumed and the petitioners are entitled to habeas relief unless the state appellate court permits them a new appeal with the appointment of an advocate as their attorney. The second category involves cases in which the defendants' attorney fails to press a *particular* argument on appeal. In such situations, the petitioners must prove prejudice as defined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), that is, that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the pro-

---

**11.** The fact that it *did* affirm, but without these arguments having been made to it and without expressly addressing the matters in question,

obviously cannot be decisive of this point. *Penson.*

ceeding would have been different." *Id.*[1] When a habeas petitioner asks a federal court to decide in which category his claim of denial of effective assistance of appellate counsel falls, the federal court is under a duty to make such a decision. In so doing, the federal court should keep a sharp eye on the substance of the situation without being overly mesmerized by the form of the matter so as not to elevate form over substance. Because I believe that Lombard was *constructively*[2] denied the assistance of appellate counsel, *in toto*, I find any discussion of prejudice or harmless error unnecessary.[3]

An indigent criminal defendant has the constitutional right to the effective assistance of counsel for his or her first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 393–95, 105 S.Ct. 830, 834–35, 83 L.Ed. 2d 821 (1985). We must not permit a state court to trespass upon this hallowed ground. The collateral review a federal court engages in, when reviewing the petitioner's claim of ineffective assistance of appellate counsel, raises an issue of whether a petitioner must show "prejudice" to obtain a Writ of Habeas Corpus. *See Penson v. Ohio*, —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (prejudice is presumed); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (prejudice needed).

The majority and I agree that the Supreme Court has created two categories concerning ineffective assistance of appellate counsel. *Penson v. Ohio* represents the first category. A *Penson* petitioner can obtain habeas relief without a showing of prejudice because "the '[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.'" *Penson*, 109 S.Ct. at 354 (quoting *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067). In *Penson*, the indigent petitioner was found guilty of several serious crimes. New counsel was appointed to represent him on appeal. The new counsel filed a timely notice of appeal. The attorney then filed with the state appellate court a document captioned "Certification of Meritless Appeal and Motion" in which the attorney certified to the court that he had carefully reviewed the record; that he found no errors requiring reversal, modification and/or vacation of the defendant's convictions or sentence; and that he would not file a meritless appeal in the matter. In the same document, the attorney also made a motion to withdraw as counsel for the defendant. *Penson*, 109 S.Ct. at 348–49.

The Ohio Court of Appeals permitted the attorney to withdraw and granted the defendant leave to file a *pro se* brief if he wished. The state court also stated that it would "independently review the record thoroughly to determine whether any error exist[ed] requiring reversal or modification of the sentence...." Thus the attorney "was permitted to withdraw before the court reviewed the record on nothing more than 'a conclusory statement by the appointed attorney on appeal that the case

1. Likewise, on direct appeal, a criminal defendant need not rebut the government's argument that the denial of defendant's appellate counsel was harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because "as a matter of law, [such an error] can never be considered harmless." *Satterwhite v. Texas*, —— U.S. ——, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988).

2. The term "constructive" means that the court concludes that in *substance* there was no representation at the appellate level. The form of an attorney's "brief" will not control the determination of whether the defendant had an attorney at the appellate stage. The filing of a piece of paper with only a caption, which is blank as to any content, is not a brief even if so denoted.

3. The majority appears to agree with me at one point that Lombard was constructively denied the assistance of appellate counsel when the majority states "that Lombard in substance was denied any effective assistance of counsel whatever on his direct appeal." Majority Opinion, at 1484. However, at another point, the majority gives the impression that there is a distinction between Lombard's case and the *Penson* case because "Lombard was never formally without counsel on his appeal[.]" Because Lombard was never "formally" without counsel, the majority engages in discussion which, in substance, is a discussion of prejudice and harmless error. It is the form over substance logic concerning Lombard's lack of appellate counsel with which I disagree, and I consequently find unnecessary the majority's prejudice and error analysis.

ha[d] no merit and that he w[ould] file no brief.'" *Id.* at 349.

The Supreme Court found that the Ohio Court of Appeals had erred in three respects with regard to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). First, the Court held that the attorney's motion to withdraw should have been denied because his motion did not point out "anything in the record that might arguably support the appeal." Second, the Ohio court "should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound." *Penson,* 109 S.Ct. at 351. Third, and what the Supreme Court considered most significant, the state court erred when it failed to "appoint new counsel after it had determined that the record supported 'several arguable claims.'" *Id.* at 351. The troublesome issue which concerned the Supreme Court concerning this error was that the Ohio court passed upon the merits of the defendant's case without the benefit of an advocate's brief, thus depriving itself and the defendant of the "benefit of an adversary examination and presentation of the issues." *Penson* at 351. Once the moment of arguable claims arrives, the state court is under a constitutional imperative to appoint new counsel so that the court has the benefit of an "advocate's brief before deciding the merits." *Penson* at 351 (quoting *McCoy v. Court of Appeals of Wisconsin,* — U.S. ——, 108 S.Ct. 1895, 1904–05, 100 L.Ed.2d 440 (1988)). Recently, the Eighth Circuit interpreted *Penson v. Ohio,* to require release of the defendant when there is a violation of *Anders,* without any showing of prejudice, "unless the state court reinstates his appeal and appoints counsel to brief all points of arguable merit." *Evans v. Clarke,* 868 F.2d 267 (8th Cir.1989); *Sanders v. Clarke,* 867 F.2d 488, (8th Cir.1989), *on remand from the Supreme Court,* —— U.S. ——, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989).

The second category of ineffective assistance of appellate counsel is exemplified by *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). In *Jones v. Barnes* the criminal defendant complained that his court-appointed attorney did not raise a nonfrivolous issue which the defendant requested the attorney to raise. The attorney did argue three arguably meritorious points in the defendant's appellate brief. The Supreme Court in *Penson* found that the failure to raise a *particular* issue on appeal is subject to the *Strickland* standard of prejudice rather than the *Penson* presumed prejudice standard. *Penson,* 109 S.Ct. at 354.

The difference between an *Anders/Penson* case and a *Jones v. Barnes* case is, of course, a difference in degree between no actual or constructive appellate advocacy, *Anders/Penson,* and inadequate or incompetent appellate advocacy, *Jones v. Barnes.* The resulting difference concerning the need for a showing of prejudice is a crucial analytical consequence of the differing content of these two categories of cases.

A federal court must decide upon which side of this fence the particular petitioner's case falls. This is the point of my difference of opinion with the majority opinion. I find that the brilliance of the majority's opinion in its opening paragraphs is clouded by the fog of the latter portions in which the majority utilizes the language of *Strickland* prejudice and harmless error.

I believe that Lombard has clearly shown that he was constructively denied the assistance of appellate counsel altogether. We should not permit the form of the attorney's document to prevail over the substance of the document, or to be more accurate, the absence of any substance on the sheets of paper entitled "Appellant's Brief" to substitute for an advocate's brief. The state court, in Lombard's case, erred by not requiring Lombard's attorney to file a satisfactory *Anders* brief.

No case is perfectly tried and the Constitution does not require perfect justice. However, it is difficult to imagine the case which is so hopeless that no piece of evidence in a case, no comment by the prosecutor, nor any ruling by the trial court does not present even the slimmest reed of an arguable issue. This is all *Anders* requires

an appointed attorney to draw to the court's attention. Certainty of prevailing on appeal is not required. Naturally, this does not mean that every defendant possesses a meritorious appeal. The *Anders* threshold requires, indeed, a very low level of arguability.

The *Anders* error in our case, in turn, denied the state court the opportunity to review an adequate *Anders* brief and appoint new counsel if it found any arguable claims. Therefore, any discussion of prejudice, possibilities, or harmless error is inapplicable to Lombard's situation. Lombard falls within the purview of *Penson v. Ohio*'s standard of *presumed* prejudice.

The formal physical presence of an appellate attorney is not appellate counsel. Lombard's attorney filed a document which contained *no* arguments going to the merits of Lombard's case. Under *Anders* and *Penson*, a criminal defendant is entitled to an advocate's brief unless the attorney seeks to withdraw from the action, which itself requires the attorney to file an *Anders* brief. The appellate document that Lombard's attorney filed as "Appellant's Brief", was, in essence, an inadequate *Anders* brief without even the attendant motion to withdraw as counsel. It is inadequate because it set forth no "arguable" claims, only a conclusory allegation of no merit. *See Penson*, 109 S.Ct. at 350–51. In addition, without a motion to withdraw, Lombard was placed in the undesirable situation of his attorney arguing the government's case without the attorney filing a motion to withdraw. Without the motion to withdraw, the state court was not prompted to consider whether to appoint Lombard new appellate counsel. This difference between Lombard and the *Penson* and *Anders* cases makes Lombard's predicament even more egregious than *Penson* and *Anders*. Lombard's case is a far cry from the "case in which counsel fails to press a particular argument on appeal." *Penson* at 354, *citing, Jones v. Barnes*, 463

U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

Lombard falls squarely within the necessary protections of *Penson v. Ohio*, —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) and *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Thus, any discussion even flirting with the language of *Strickland*'s prejudice or harmless error analysis is unnecessary. *Penson*, 109 S.Ct. at 354.[4] I therefore concur joyfully in the result and write separately to express my belief that this court should decisively decide on which side of the *Anders/Penson* and *Jones v. Barnes* fence Lombard's case falls. Because I find that Lombard was constructively denied the assistance of appellate counsel altogether, I believe the presumed prejudice standard of *Penson* applies thereby obviating the need for any prejudice or harmless error discussion. *Accord Evans v. Clarke*, 868 F.2d 267 (8th Cir.1989); *Sanders v. Clarke*, 867 F.2d 488 (8th Cir.1989), *on remand from the Supreme Court* —— U.S. ——, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989).

---

**4.** It is therefore inappropriate to apply either the prejudice requirement of *Strickland* or the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

(1967), and *Satterwhite v. Texas*, —— U.S. ——, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988). *Penson v. Ohio*, —— U.S. ——, 109 S.Ct. 346, 353–54, 102 L.Ed.2d 300 (1988).