For this reason and those stated above, the judgment of the district court is in all things AFFIRMED.

**Larry LOFTON, Petitioner–Appellant,**

v.

**John P. WHITLEY, Warden, Louisiana State Penitentiary, Respondent–Appellee.**

No. 89–3484.

United States Court of Appeals, Fifth Circuit.

July 13, 1990.

Larry Lofton, Angola, La., pro se.

Sandra Pettle, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before GARZA, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Lofton appeals from the district court's dismissal of his petition for a writ of habeas corpus, alleging that his conviction was improper because he was denied effective assistance of counsel on appeal and because evidence admitted at trial was the fruit of an illegal seizure.

I

On March 19, 1981, while delivering a package to his sister, Lofton began arguing with a neighbor, Geraldine Jones. He left after delivering the package, but returned later in the day and shot her before several witnesses. When police investigated they discovered Lofton's identity through some of his sister's neighbors, who knew him by sight. The officers found a car matching a description by some witnesses parked outside of Lofton's parents' home. Lofton's mother informed the officers that Lofton was not home, but said she would send him to the police station when he returned. She says that she was told they wanted him in connection with a traffic ticket. After Lofton received the message from his mother, Lofton went to the police station, where he was given *Miranda* warnings and advised that he was under investigation.[1] Lofton claims that he was not given an opportunity to get an attorney at that point. The officers took a Polaroid snapshot of Lofton, then left him at the police station. Lofton testified that he did not feel free to leave. The officers compiled a photo line-up and drove to the victim's house, where two witnesses picked Lofton's picture out of the line-up and identified him as the killer. This was two days after the shooting. The officers returned to the station and placed Lofton under arrest.

Lofton moved to suppress the identification evidence, arguing that it was the result of an illegal arrest and also that the photo line-up was unduly suggestive. The trial court denied the motion, and the evidence was admitted. In addition to the evidence that two people had picked Lofton out of a photo array, there were four eyewitnesses who testified at trial that they saw Lofton shoot the victim.

Lofton was convicted of second degree murder and sentenced to life imprisonment. On appeal his appointed attorney filed a two page brief which simply urged:

> Defendant respectfully requests the court to review the record for errors patent on the face of the record. Louisiana Constitution of 1974, Article 1, Section 19; *State v. Martin*, 329 So.2d 688 (La.1976). In accord with such a review, the defendant asks the court to reverse his conviction and sentence.

His conviction was affirmed, and his application for state habeas relief was denied. The Louisiana Supreme Court denied Lofton's application for writ of mandamus.

Having exhausted his state court remedies, Lofton filed a *pro se* petition for writ of habeas corpus in federal district court,

---

1. In his petition for habeas before the district court Lofton alleged that he was picked up by police officers and that this was an unlawful arrest without a warrant.

alleging: (1) error in the trial court's denial of his motion to suppress identification; (2) conviction obtained by use of evidence obtained pursuant to an unlawful arrest; (3) conviction obtained by violation of the privilege against self-incrimination; (4) conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (5) denial of effective assistance of counsel, which deprived petitioner of his right to appeal; and (6) that the trial court exceeded its jurisdiction. The district court did not conduct an evidentiary hearing and, basing its findings on the state court record, denied the petition. On appeal from the denial of his habeas petition, Lofton argues only that the evidence of the photo array should have been excluded as the fruit of an illegal seizure, and also that he was denied effective assistance of counsel on appeal.

## II

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Lofton contends that he was constructively denied assistance of counsel on appeal because his attorney filed a brief which did not assert any arguable error, and therefore prejudice should be presumed. The Supreme Court clarified the two types of claims involving the denial of effective assistance of appellate counsel in *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 352–54, 102 L.Ed.2d 300 (1988). First, if there was an actual or constructive denial of counsel on appeal, then prejudice is presumed. Second, if the claim is that counsel's performance was merely ineffective, then the petitioner must show prejudice. The district court considered this to be a case of the second type, to be assessed under *Strickland*'s prejudice standard. This was error.

*Penson* reaffirmed *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), wherein the court rec-

ognized that in some circumstances counsel could withdraw without denying fair representation, provided some safeguards were observed. While counsel here technically did not withdraw, he may as well have, for he presented no claims of error to the appellate court. *Anders* requires counsel who believes appeal would be frivolous

[first] to conduct "a conscientious examination of the case." [*Anders*], at 744 [87 S.Ct. at 1400] ... If he or she is then of the opinion that the case is wholly frivolous, counsel may request leave to withdraw. The request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Ibid.*

*Penson,* 109 S.Ct. at 350. Here counsel apparently thought the case was frivolous, as he asserted no grounds for appeal, but he did not follow the *Anders* procedure, and neither asked to withdraw nor filed a brief that pointed to anything arguably supporting an appeal.

In *Penson* the appellate court permitted appellate counsel to withdraw without writing a complete *Anders* brief, and when the appellate court determined that there were arguable issues for appeal it did not appoint new counsel, but proceeded to review the record itself, only finding one issue requiring reversal on one count. Withdrawal without filing an *Anders* brief amounted to denial of counsel. Nonetheless, the government argued to the Supreme Court that under either the *Strickland*[2] prejudice test or the *Chapman*[3] harmless error test the conviction should be affirmed, for the indigent could not show that his conviction would have been reversed if he had an effective lawyer. The Supreme Court rejected this argument:

[I]n finding that petitioner suffered no prejudice, the court was simply asserting that, based on its review of the case, it was ultimately unconvinced that petitioner's conviction—with the exception of one count—should be reversed. Finding harmless error or a lack of *Strickland* prejudice in cases such as this, however,

2. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

3. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

would leave indigent criminal appellants without any of the protections afforded by *Anders*. Under the State's theory, if on reviewing the bare appellate record, a court would ultimately conclude that the conviction should not be reversed, then the indigent criminal appellant suffers no prejudice by being denied his right to counsel.... adopting the State's view would render meaningless the protection afforded by *Douglas* and *Anders*.

*Penson*, 109 S.Ct. at 353.

This circuit addressed the issue of what type of claim was presented when counsel files a "no merit" brief in *Lombard v. Lynaugh*, 868 F.2d 1475, 1477 (5th Cir. 1989). The no merit brief filed in *Lombard* was similar to the brief filed in this case. We found that there was constructive denial of the assistance of counsel because the attorney "did *nothing* to attempt to aid Lombard's appeal, beyond the initial perfecting of the appeal itself." 868 F.2d at 1480. Like in this case, the attorney did not withdraw, and the accused was never formally without counsel on his appeal, but nonetheless, we found that the accused, "in a functional sense, was afforded almost no appellate representation whatever." 868 F.2d at 1481. Guided by *Penson*, this court held that the petitioner did not have to show prejudice because he was constructively denied assistance of appellate counsel. In *Lombard*, however, this court found:

> Since we have determined that there *were* nonfrivolous direct appeal issues and that we cannot conclude beyond a reasonable doubt that reversal on direct appeal would not have occurred but for the virtually total default by appellate counsel, Lombard is therefore entitled to relief; we accordingly need not and do not determine whether there would be any entitlement to such relief if there had been no nonfrivolous appellate issue or, assuming *arguendo* that the inquiries differ, if we could and did determine beyond a reasonable doubt that the conviction would have been affirmed on di-

rect appeal had there been fully effective appellate counsel.

*Id.* at 1484.

Although *Lombard* suggests that the court below should be affirmed if all of Lofton's claims are frivolous, there are several good reasons for not affirming. First, that counsel did not formally withdraw does not appear to be a significant distinction that would change the analysis from the presumed prejudice of *Penson* to a harmless error standard. Lofton may have been formally represented by counsel, but the failure to raise *any* grounds for appeal was the equivalent of his attorney's withdrawal. In *Penson* it was argued that the defendant was not entitled to any relief either because he suffered no prejudice under *Strickland* or because any error was harmless under *Chapman*. The Supreme Court rejected either of these analyses, and reasoned that when a court had to consider the record without the advice of counsel, reversal was mandated.

■ In addition, it was very important in *Lombard, Penson,* and *Anders* that the state court of review independently examined the record for errors. In those cases the review was without the advice of counsel, which ultimately vitiated the appeal, but the courts did examine the record thoroughly. It is unclear that a searching review of the record for any arguable basis for appeal was made by either counsel or the state appeals court in this case. As the district court stated in its memorandum opinion denying relief:

> Article 920 of the Louisiana Code of Criminal Procedure provides that the only matters that will be considered on appeal are "(1) an error designated in the assignment of errors; and (2) an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. [Error patent on the face of the record.]" A Louisiana court, in reviewing the record for errors patent on the face thereof, is limited to reviewing the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment,

the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impanelling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. *State v. Oliveaux,* 312 So.2d 337 (La.1975).

This does not provide the "full examination of all the proceeding[s] to decide whether the case is wholly frivolous" which is required by *Anders.* Nor does it appear that the federal district court thoroughly examined the record for errors, either those asserted by Lofton or those that he, as a *pro se* petitioner, may have missed. Given the limited scope of review, we cannot conclude beyond a reasonable doubt that Lofton had no nonfrivolous grounds for appeal, or that the error in failing to brief any issues was harmless.

It is debatable whether all of Lofton's claims were frivolous. Our review of the record without the benefit of counsel reveals at least one issue that may not have been frivolous, even if Lofton might have lost an appeal: Whether *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), would have required exclusion of the photo identification evidence. Lofton argues that the trial court erred in denying the motion to suppress identification, in that he was illegally detained when the police took a picture of him that was used in a photo array.[4] Even if he were illegally detained, illegal "detention does not void a subsequent conviction." *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). The identification evidence may have been improperly admitted, however, if it was the fruit of an unlawful detention. *See Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprint evidence

not admissible because it was the result of an illegal arrest).[5]

There is no indication that the picture itself was admitted into evidence, and the state argues that the exclusionary rule only bars evidence obtained as a direct result of an illegal seizure. *See Passman v. Blackburn,* 652 F.2d 559, 565 (5th Cir. 1981). In *Passman* two photographs were taken of the petitioner after his initial arrest, which was illegal, but the court found no "fruits" problem, for the photographs were not introduced into evidence. The court found other problems with the photo array identification, which it found to be harmless error, but did not find that the evidence of the identification should have been excluded because the pictures were taken incident to an illegal arrest. *Id.*

*Passman* does not cite *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), which appears to reach a contrary result. In *Crews* the situation was very similar to that in the instant case: Crews was initially wrongfully detained and a picture was taken. He was released while the officers had the victim consider a photo array containing the picture. The victim identified Crews, and the court subsequently ordered a lineup, where the victim again identified Crews. The victim yet again identified Crews in court at trial as the one who accosted her. The district court excluded all evidence of the photo identification and the lineup identification, but permitted the in-court identification. The D.C. Circuit reversed, holding that the in-court identification was also improper. The Supreme Court reversed this judgment, holding that although the photo identification and the lineup were the fruits of the poisoned tree, the in-court identification was based upon the victim's having seen the suspect when he committed the crime,

---

**4.** The trial court did not give reasons for denying the motion to suppress, and we cannot tell whether it reasoned that Lofton was not illegally detained, or whether it found that the evidence need not be excluded despite an illegal detention.

**5.** Even if the picture were considered a fruit of an illegal detention, the claim is barred from collateral review by *Stone v. Powell,* 428 U.S.

465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052.

and was not the result of the earlier illegal detention. Following *Crews* would appear to require suppression of any evidence of the photo identification, provided, of course, that the detention were illegal.[6]

Because we cannot determine that there would have been no nonfrivolous grounds for appeal, and because Lofton's appellate counsel asserted no grounds for appeal yet failed to follow the *Anders* procedures, we hold that Lofton is entitled to relief. Accordingly, the district court's judgment denying habeas relief is reversed, and the cause is remanded to the district court so that it may enter judgment granting the writ of habeas corpus unless the state of Louisiana affords Lofton an out-of-time direct appeal with the assistance of competent counsel within such time as the district court shall fix.

REVERSED and REMANDED.

---

6. We cannot tell from the bare record before us whether or not there was in fact an illegal detention. This is one of the things that a searching review of the record and questioning of the petitioner by appellate counsel ordinarily would reveal, and of which appellate counsel would inform the court.