**R.L. SHILOH–BRYANT**

v.

**DIRECTOR, TDCJ–ID.**

**Civil Action No. 6:98CV37.**

United States District Court,
E.D. Texas,
Tyler Division.

May 8, 2000.

Roi Le' Shiloh–Bryant, Tennessee Colony, TX, pro se.

John Bennett, Staff Counsel for Offenders, Huntsville, TX, for petitioner.

Edward Larry Marshall, Attorney General Office, Austin, TX, Kristen Elaine Jernigan, Office of Attorney General, Habeas Corpus Division, Austin, TX, for respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

STEGER, District Judge.

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Judith K. Guthrie, who issued a Report and Recommendation concluding that the petition for a writ of habeas corpus should be granted. The Director has filed objections to the Report and Recommendation.

The Report of the Magistrate Judge, which contains her proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections raised by the Director to the Report, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the objections of the Director are without merit.

It is particularly noted that the Director specifically objects to Magistrate Judge Guthrie's alleged contention that the Petitioner has been denied a federal right to effective assistance of counsel on discretionary review. The Director also asserts that relief is barred by the non-retroactivity rule of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In reviewing the Report and Recommendation, along with all of the other records compiled in this case, it is clear that the Director is misrepresenting the conclusions of Magistrate Judge Guthrie. Judge Guthrie clearly noted that there is no right to counsel on discretionary review. She also clearly noted that this case does not involve allegations of ineffective assistance of counsel on discretionary review; instead, it concerns ineffective assistance of counsel on appeal. In *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court held that state prisoners are entitled to the effective assistance of counsel when state law provides for appeals as of right. Judge Guthrie correctly concluded that the issue before the Court concerns the parameters of the Petitioner's "appeal as of right" as determined by state law. Texas law at both the time the Petitioner's appeal was decided and at the present time requires appellate counsel to notify his client that his conviction has been affirmed and that he can pursue discretionary review on his own. *Ex parte Wilson,* 956 S.W.2d 25 (Tex. Crim.App.1997); *Ex parte Jarrett,* 891 S.W.2d 935 (Tex.Crim.App.1994). Judge Guthrie found that the Petitioner's appellate attorney did not fulfill his duty under state law and that the Petitioner was thereby denied his right to at least file a petition for discretionary review. She correctly concluded that the Petitioner was denied effective assistance of counsel on appeal. She also correctly found that the rules governing effective assistance of appellate counsel were in effect at the time the appellate court decided the Petitioner's appeal and thus relief in this case is not barred by *Teague.*

As a final matter, Magistrate Judge Guthrie did not have the benefit of the

Supreme Court's decision in *Roe v. Flores–Ortega*, 528 U.S. ——, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), when the Report and Recommendation was filed. The Supreme Court held that the proper framework for evaluating a claim that counsel was ineffective on appeal is governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness based on the facts of the particular case, viewed as of the time of counsel's conduct, and (2) that counsel's deficient performance prejudiced the defendant. In the present case, the Petitioner's appellate attorney's representation fell below the objective standards of reasonableness as previously set forth in *Jarrett* and that such deficient representation prejudiced the Petitioner by denying him his right to at least file a petition for discretionary review. Consequently, Magistrate Judge Guthrie's conclusions are still correct in light of the standards set forth in *Roe v. Flores–Ortega*. Therefore the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **GRANTED**. The Petitioner's conviction is reversed unless the Texas Court of Criminal Appeals within ninety days from this date grants the Petitioner an out-of-time appeal and permits him to file a petition for discretionary review. It is further

**ORDERED** that a copy of this order shall be mailed to the Troy C. Bennett, Jr., Clerk, Texas Court of Criminal Appeals, Supreme Court Bldg., P.O. Box 12308, Capitol Station, Austin, Texas 78711, by certified United States mail, return receipt requested. It is finally

**ORDERED** that the order referring the case to Magistrate Judge Guthrie is **VACATED**.

## FINAL JUDGMENT

The Court having considered the Petitioner's case and rendered its decision by opinion issued this same date, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **GRANTED**. The Petitioner's conviction is reversed unless the Texas Court of Criminal Appeals within ninety days from this date grants the Petitioner an out-of-time appeal and permits him to file a petition for discretionary review.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

GUTHRIE, United States Magistrate Judge.

Petitioner R.L. Shiloh–Bryant, an inmate confined in the Texas prison system, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred for findings of fact, conclusions of law and recommendations for the disposition of the case. The focus of the petition concerns whether the Petitioner's attorney on appeal was ineffective.

### Facts of the Case

On May 24, 1991, the Petitioner was indicted by an Anderson County Grand Jury for the offense of possession of a deadly weapon in a penal institution, which included an enhancement paragraph. The indictment, in relevant part, reads as follows:

... ROY BRYANT, hereinafter styled Defendant, on or about the 3rd day of September, A.D.1990, ... did then and there knowingly, intentionally, and recklessly possess and conceal a deadly weapon, to-wit: a knife like object known as a shank, manifestly designed, made, or adapted for the purpose of inflicting death and serious bodily injury, and the said defendant was then and there confined in a penal institution, ...

On November 2, 1992, a jury trial began. On November 4, 1992, the jury found the

Petitioner guilty. On the same day, the jury proceeded to find the enhancement paragraph to be true and assessed punishment at 15 years imprisonment in the Texas prison system.

The Petitioner filed a notice of appeal. On November 29, 1993, William M. "Bill" House was appointed to represent the Petitioner on appeal. The conviction was affirmed by the Twelfth Court of Appeals on December 28, 1994. The Petitioner did not file a petition for discretionary review, and the mandate affirming the conviction was issued on February 13, 1995. The Petitioner alleges that he did not file a petition for discretionary review because House never told him that his conviction had been affirmed and never fulfilled his obligation of telling him about his right to file a petition for discretionary review.

The Petitioner filed an application for a writ of habeas corpus in state court on March 4, 1997. He noted that Bill House filed an appellate brief in late January, 1994. He states that in 1994 he received only one letter, another correspondence and a copy of the brief from House. He never heard from him again. He wrote to House twice in 1995 about the status of his appeal and did not receive a reply. He wrote to him again in 1996. On February 4, 1997, he wrote to the Federal Public Defender in Ft. Worth about the status of the appeal. In a letter, dated February 25, 1997, Assistant Federal Public Defender Peter Fleury told him that the conviction had been affirmed. The letter included a copy of the opinion. In his state application for a writ of habeas corpus, the Petitioner complained that Bill House never told him that his conviction had been affirmed. He argued that he had been denied the opportunity to file a petition for discretionary review because of ineffective assistance of counsel. The Texas Court of Criminal Appeals denied the application without written order on December 18, 1997.

The present petition was filed on January 20, 1998. The petition was dismissed as being barred by the statute of limitations. On April 16, 1999, the Fifth Circuit vacated the decision and remanded it for further consideration. The Director filed an answer on the merits on August 23, 1999. Pursuant to an order of the Court, the Director filed a supplemental answer on January 7, 2000. The supplemental answer included an affidavit from Bill House and copies of the prison system's incoming legal/special mail logs for the unit where the Petitioner was incarcerated. The mail logs cover a four month period of time starting on the day the Twelfth Court of Appeals issued its decision. There is no entry in the logs showing that the Petitioner ever received a letter from Bill House. An evidentiary hearing was conducted concerning the Petitioner's claims on March 30, 2000.

*Evidentiary Hearing*

The Petitioner and Bill House testified during the evidentiary hearing. The Petitioner testified that he was confined at the Hughes Unit from the time he was convicted until January, 1999. The trial began on November 2, 1992. The Petitioner was found guilty and sentenced to fifteen years in prison. The Petitioner was represented by Barbara Law at trial. She filed a notice of appeal on the Petitioner's behalf. Bill House was appointed to represent him on November 29, 1993. The Petitioner testified that his conviction was affirmed on December 28, 1994. Bill House, however, never told him that his conviction had been affirmed. He never told him about his right to file a petition for discretionary review. The Petitioner testified that he thus did not file a petition for discretionary review. He learned that his conviction had been affirmed by a federal public defender in a letter dated February 25, 1997.

The mail logs were admitted into evidence without objection. The Petitioner noted that the mail logs cover a four month period of time starting on December 28, 1994. The mail logs cover the period of time when the Twelfth Court of

Appeals issued its decision and when the mandate was issued affirming the conviction. The Petitioner testified that any mail from Bill House would have been logged. The mail logs do not show that the Petitioner ever received a letter from Bill House.

The Petitioner finally testified about Bill House's affidavit. He noted that House provided a sample copy of a form letter that he sends to defendants telling them that their conviction has been affirmed and telling them about their right to file a petition for discretionary review. The Petitioner noted that the letter is dated June 1, 1998. The Petitioner argued that the letter is not relevant to whether House sent him a letter in December, 1994, or January, 1995. The Petitioner reiterated that he never received a letter from Bill House telling him that his conviction had been affirmed and telling him about his right to file a petition for discretionary review.

Bill House testified that he could not find his file concerning the Petitioner's case. He testified that it is his practice to notify his clients by mail when their convictions are affirmed. He has used the form letter for many years. He tells his clients how to file a petition for discretionary review *pro se* if he does not intend to represent them on a petition for discretionary review. He believes that he sent a letter to the Petitioner.

On cross-examination, House examined the mail logs and agreed that there is not an entry showing that the Petitioner received a letter from him. He testified that he does not know why a letter was not logged. House testified that he does not have an independent recollection of the case. He also testified that he is not familiar with the *Jarrett* case, although he may have read it. He, nonetheless, noted that it his is normal practice to contact his clients.

When questioned by the Court, House testified that he has been an attorney since 1991. He previously represented many inmates who were charged with committing crimes. He does not represent many inmates anymore because the State created a defender program to represent inmates. House testified that he is still appointed to represent inmates when there is a conflict. He testified that it is unusual for him to represent an inmate on appeal when an attorney with the defender program represented the inmate at trial. His practice today primarily involves criminal and family law. He normally represents his clients through appeals. With respect to *Jarrett*, he testified that he is not familiar with the name of the case that requires him to notify defendants when their convictions are affirmed and to tell them about their right to file a petition for discretionary review, although he is aware that a case has been issued requiring him to do so. He simply is not familiar with the name of the case. House testified that he does not recall when he first started telling clients about their right to file a petition for discretionary review, although he did develop that practice at one point in time. He attached the 1998 letter to his affidavit because that was the earliest case that came to mind, although he sent such letters prior to 1998. He again testified that he does not recall when he started sending such letters.

### Discussion and Analysis

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins,* 988 F.2d 1364, 1367 (5th Cir.1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir.1996).

■ At the time the Petitioner's appeal was affirmed by the Twelfth Court of Appeals, the law was clearly settled that criminal defendants have a right to effective assistance of counsel and federal habeas corpus relief is available when a prisoner is denied effective assistance of counsel. *Bryant v. Scott,* 28 F.3d 1411 (5th Cir. 1994); *Lyons v. McCotter,* 770 F.2d 529 (5th Cir.1985). In order to succeed on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was deficient, and (2) that deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The law was also settled that state prisoners are entitled to the effective assistance of counsel when state law provides for appeals as of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). By 1994, the Fifth Circuit had granted habeas corpus relief in cases where a state prisoner had been denied effective assistance of counsel on appeal. *Lombard v. Lynaugh,* 868 F.2d 1475 (5th Cir.1989). The Fifth Circuit also noted that prejudice is presumed when the deficiencies of counsel resulted in "an actual or constructive complete denial of any assistance of appellate counsel." *Id.* at 1480. It is thus clear that by the time the Petitioner's conviction became final, he had a right to effective counsel on appeal to the extent that Texas law gave him the right to appeal and that federal habeas corpus relief is available if he was denied such right.

The present case concerns whether the Petitioner is entitled to federal habeas corpus relief because his appellate attorney failed to timely notify him about his right to file a petition for discretionary review in the Texas Court of Criminal Appeals. The Director argues that such relief should be denied because it would be a new rule of law and relief is barred by the non-retroactivity rule of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). He asserts that the applicability of *Teague* is a threshold matter that must be decided before a federal habeas court can reach the merits of a claim.

■ The Fifth Circuit recently discussed the approach that should be employed in applying *Teague* in *Matthew v. Johnson,* 201 F.3d 353 (5th Cir.2000). The Director correctly noted that the applicability of *Teague* is a threshold matter. *Id.* at 359 (citations omitted). Three steps must be employed in applying *Teague. Id.* First, the court must determine when the petitioner's conviction and sentence became final. *Id.* Second, the court must "survey the legal landscape" as it then existed and determine whether a state court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. *Id.* The third step is considered only if the court finds that the petitioner's claim necessitates a new rule. *Id.* Under those circumstances, the court must determine whether the new rule falls within either of two narrow exceptions before the court may announce it and apply it. *Id.*

■ As previously stated, at the time the Twelfth Court of Appeals affirmed the Petitioner's conviction in 1994, the law was clearly established that a defendant is entitled to the effective assistance of counsel when state law provides an appeal as of right. *Evitts v. Lucey, supra.* In light of *Evitts v. Lucey,* the Court must look to state law to determine the parameters of the Petitioner's "appeal as of right." The rights of the Petitioner at the time his conviction was affirmed were spelled out by the Texas Court of Criminal Appeals in *Ex parte Jarrett,* 891 S.W.2d 935 (Tex. Crim.App.1994). The decision was announced on September 21, 1994, which was three months before the Twelfth Court of Appeals issued a decision on the Petitioner's appeal. It was the clearly established law when the Petitioner's conviction became final. The Texas Court of Criminal Appeals noted that it had been long estab-

lished that a criminal defendant had a right to make a request for discretionary review. *Id.* at 940. The Court went on to say that "if this right is abridged or denied through the misfeasance or nonfeasance of counsel there is an abridgment of the Sixth and Fourteenth Amendments through which the State benefits and the individual's rights are constitutionally curtailed. *See, Cuyler,* 446 U.S. at 344, 100 S.Ct. at 1715. *See also, Ayala,* 633 S.W.2d at 528." *Id.*

It is again noted that the second step in the *Teague* analysis requires this Court to "determine whether a state court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." The Texas Court of Criminal Appeals made it clear that it thought that if a defendant's right to make a request for discretionary review was abridged or denied through the misfeasance or nonfeasance of counsel, the Sixth and Fourteenth Amendments of the Constitution would be violated. The Texas Court of Criminal Appeals held that appellate counsel had a duty to consult with and advise his client about the meaning and effect of the opinion of the court of appeals and that he had a duty to advise his client about the possibility of review by the Texas Court of Criminal Appeals. *Id.* at 941. Consequently, in light of *Evitts v. Lucey,* it is clear that the Petitioner had a federal right to effective assistance of counsel on appeal to the extent that a right to appeal was provided by state law, and it is equally clear that at the time the Petitioner's conviction became final he had a right to be informed about the right to file for discretionary review and to be told about that right by his appellate attorney. He was not entitled to have his case heard on discretionary review or have an attorney on discretionary review, but he had a right to at least file for discretionary review and be told about that right by his attorney.

The Director argues that relief is not available in light of *Teague* because the Supreme Court has not specifically addressed whether a petitioner is constitutionally entitled to be notified that his conviction was affirmed and notified of his right to file a petition for discretionary review. The Director's approach, however, erroneously focuses on whether the Supreme Court has decided the issue, as opposed to what a state court would have felt compelled to conclude. *Matthew v. Johnson,* 201 F.3d at 359. The Director is trying to narrowly limit the application of *Evitts v. Lucey, supra,* which focuses of the right to appeal as dictated by state law. Furthermore, the Director is trying to broadly apply *Teague* to prevent the application of existing rules to novel facts. The Fourth Circuit was confronted with a similar approach when the Commonwealth of Virginia argued that the *Teague* prohibition against applying "new rules" should be applied broadly in ineffective assistance of counsel cases in *Ostrander v. Green,* 46 F.3d 347 (4th Cir.1995). The Fourth Circuit made the following comments:

A "rule" is a principle of law we apply to factual situations—be they few or many—within the rule's intended meaning. Though cases are the hardware out of which we fashion rules, rules are more than just cases. Sometimes courts fashion broad rules intended to govern an array of factual settings; often they frame more narrowly. When we ask whether a proferred holding would be a "new rule," we must therefore bear in mind the level of generality at which the prevailing rule or rules are meant to be applied. *Turner,* 35 F.3d at 883. Just as habeas petitioners could always avoid the *Teague* bar if we define "rules" at an abstractly broad level of generality (e.g. "due process"), so also could respondents erect the bar in almost every case if we characterize a "rule" as "the most specific conclusion or holding [the petitioner] hopes we reach[.]" *Id.* (emphasis in original deleted). History does repeat itself, but

not frequently or comprehensively enough to provide a case law exemplar for every set of facts.

*Id.* at 354. The Court concluded that the ineffective assistance of counsel formula was broad enough for evaluating a myriad of factual contexts. "An existing normative rule applied to a novel set of facts becomes 'new' only if the rule's boundaries are extended, and not merely because its interstices are filled." *Id.*

The Court is of the opinion that the present case merely applies established case law concerning ineffective assistance of counsel claims to the facts of this case. The basic issue is whether counsel's representation on appeal was deficient and whether the Petitioner was prejudiced by such deficient representation. The context of whether counsel's representation was deficient must relate back to state law. Counsel's duties in the present case were established in *Jarrett.* In *Ostrander,* the Fourth Circuit was of the opinion that there was no "new rule" of law involved in applying the facts of that case to a basic ineffective assistance of counsel claim. The undersigned is of the opinion that the present case likewise does not involve a "new rule" of law, rather it concerns the application of established rules to the unique facts of this case.

During closing arguments, the Director also argued that the Supreme Court has never held that there is a right to effective assistance of counsel on discretionary review. The Director stressed that in *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982), the Supreme Court reversed a Fifth Circuit decision granting habeas corpus relief where retained counsel failed to timely file an application for a writ of certiorari to the Florida Supreme Court to review a conviction. The Supreme Court's decision was based on *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), where the Supreme Court held that there is no right to counsel on discretionary review. This case does not concern, however, whether the Petitioner had a right to counsel on a petition for discretionary review. Instead, it concerns the duties of an attorney on appeal prior to that time. In *Evitts v. Lucey,* the Supreme Court discussed *Ross v. Moffitt* and confirmed the basic principle that there is no right to counsel on discretionary appeal but there is a right to effective assistance of counsel when state law provides for appeals as of right. 469 U.S. at 401–02, 105 S.Ct. 830. Again, the focus of attention in this case must be on the appellate rights provided to the Petitioner by state law at the time the Twelfth Court of Appeals affirmed his conviction.

The Court notes that the Texas Court of Criminal Appeals modified the requirements set forth in *Jarrett* in *Ex parte Wilson,* 956 S.W.2d 25 (Tex.Crim.App. 1997). The Court of Criminal Appeals reaffirmed the basic principle that there is no constitutional right to counsel for discretionary review. The Court modified *Jarrett* to the extent that appellate attorneys would no longer be required to advise defendants as to the merits of discretionary review. *Id.* at 27. Nonetheless, the Texas Court of Criminal Appeals reaffirmed the basic principle in *Jarrett* that an appellate attorney has the obligation to tell his client "that his conviction has been affirmed and he can pursue discretionary review on his own" and that the defendant has been denied his Sixth Amendment right to effective assistance of counsel if "appellate counsel's action or inaction denies the defendant his opportunity to prepare and file a petition for discretionary review." *Id.* at 26–27.

It is finally noted that the facts of the *Jarrett* case are somewhat similar to the present case. The appellate attorney, just like the attorney in the present case, specified that he informed his client about his rights by mail. The Texas Court of Criminal Appeals made the following comments in response to the attorney's representation:

> However, the letter that counsel claims to have sent is not attached, nor the

address to which counsel claims to have sent said letter, nor the manner in which said letter was sent to applicant, all of which may be germane to the habeas judge's findings of fact. Further, there is no indication the habeas judge determined whether applicant received said notification, pursuant to our original order.

*Id.* at 940. The type of questions mentioned by the Texas Court of Criminal Appeals should likewise be considered in the present case.

■ This brings us to the facts of the present case. The Petitioner testified that his appellate attorney never told him that his conviction had been affirmed and never advised him that he could pursue discretionary review on his own. His attorney testified that it is his practice to tell his clients by letter that their conviction has been affirmed and to tell them that they have a right to file a petition for discretionary review on their own. He was not certain, however, when he started mailing such letters to his clients, and he could only speculate as to whether he sent such a letter to the Petitioner. He had no proof that he ever sent such a letter to the Petitioner. Counsel did not have, for example, a copy of a certified letter with a return receipt showing that the Petitioner actually received the letter. On the other hand, the incoming legal mail logs support the Petitioner's assertion that he never received a letter from his appellate attorney. In light of the Petitioner's testimony and the mail logs and the absence of any definitive evidence to the contrary, the Court must conclude that the Petitioner's attorney did not fulfil his duty of telling the Petitioner that his conviction had been affirmed and that he can pursue discretionary review on his own. The Court must also conclude, as a matter of law, that counsel's failure to fulfil his duty prejudiced the Petitioner because the Petitioner was unable to pursue his right under state law to make a request for discretionary review. The Petitioner is entitled to federal habeas corpus relief. The proper remedy is to grant the Petitioner an out-of-time appeal and to place him back in the position to timely file a *pro se* petition for discretionary review.

### Recommendation

It is accordingly recommended that the above-styled petition for writ of habeas corpus should be granted. The Texas Court of Criminal Appeals should be given ninety days from the issuance of the Final Judgment to grant the Petitioner an out-of-time appeal and to permit him to file a petition for discretionary review. The Petitioner's conviction should be reversed if the Texas Court of Criminal Appeals fails to timely give the Petitioner an out-of-time appeal.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected—to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Ass'n.,* 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).